# United States Court of Appeals for the Federal Circuit

2006-5135

TERESA ALEN FERREIRO,
VIUDA DE PEREZ,
as surviving spouse of Luis Perez, deceased,
DOROTHY ERASMO JEFFERS,
as surviving spouse of Charles Jeffers, deceased,
MARIO VAZQUEZ LOPEZ,
individually, and on behalf of,
a class of similarly situated persons,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Charles P. Randall, of Boca Raton, Florida, argued for plaintiffs-appellants.

David F. D'Alessandris, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, and Mark A. Melnick , Assistant Director.

Appealed from:  United States Court of Federal Claims

Judge Nancy B. Firestone

# United States Court of Appeals for the Federal Circuit

2006-5135

TERESA ALEN FERREIRO,
VIUDA DE PEREZ,
as surviving spouse of Luis Perez, deceased,
DOROTHY ERASMO JEFFERS,
as surviving spouse of Charles Jeffers, deceased,
MARIO VAZQUEZ LOPEZ,
individually, and on behalf of,
a class of similarly situated persons,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  September 14, 2007

_____

Before MICHEL, Chief Judge, LOURIE and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Teresa Alen Ferreiro, Dorothy Erasmo Jeffers, and Mario Vazquez Lopez (collectively "appellants") appeal the United States Court of Federal Claims' dismissal of their case for lack of subject matter jurisdiction.  See Ferreiro v. United States, 72 Fed. Cl. 1 (2006).  Because the Treasury regulations identified by appellants do not require the United States to pay money damages for the claims alleged in the complaint, we affirm.

**BACKGROUND**

Appellants fall into two categories: those seeking civil service retirement benefits (Ferreiro and Jeffers) and those seeking veteran's benefits (Lopez). Appellants claim to be former employees or widows of former employees of the United States residing in Cuba. Appellants contend that the United States has been withholding payments from them since 1963 because of the United States' embargo against Cuba. See 31 C.F.R. Part 515 ("Cuban Assets Control Regulations"). Part of those regulations require persons holding certain types of property of a Cuban national to place that property into a "blocked account."[1] See 31 C.F.R. § 515.205(a). "Persons" under § 515.205 includes the United States. Id. at 515.205(j).

The Court of Federal Claims concluded that it lacked subject matter jurisdiction over appellants' claims. See Ferreiro v. United States, 72 Fed. Cl. 1 (2006). It offered two independent grounds for dismissing appellants' civil service retirement benefit claims. First, the Court of Federal Claims concluded that the Supreme Court's decisions in Lindahl v. Office of Personnel Management, 470 U.S. 768 (1985), and United States v. Fausto, 484 U.S. 439 (1988), preclude jurisdiction over the civil service retirement benefit claims because the procedures and judicial review provisions prescribed by the Civil Service Retirement Act (CSRA), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended at 5 U.S.C. §§ 8331-8351), constitute the exclusive means to obtain civil service retirement benefits. See Ferreiro, 72 Fed. Cl. at 4-5. Second, the Court of Federal Claims concluded that appellants failed to identify a money-mandating

---

[1] A blocked account is defined by the regulations as "an account in which any designated national has an interest, with respect to which account payments, transfers or withdraws or other dealings may not be made or effected except pursuant to an authorization or license authorizing such action." 31 C.F.R. § 515.319.

source of law—a prerequisite to ground a claim for money damages under the Tucker Act's waiver of sovereign immunity. Id. at 5. With respect to Lopez's claim for veteran's benefits, the Court of Federal Claims concluded that the exclusive means to secure such benefits was by application to the Department of Veterans Affairs. Id. at 5-6 (following Van Allen v. United States, 66 Fed. Cl. 294, 296 (2005)). Thus, the trial court concluded it lacked subject matter jurisdiction over Lopez's claims for veteran's benefits.

Appellants appeal the dismissal of their claims. We have jurisdiction under 28 U.S.C. § 1295(a)(3) (2006).

## DISCUSSION

The scope of the Court of Federal Claims jurisdiction is a question of law that we review de novo. See Bianchi v. United States, 475 F.3d 1268, 1273 (Fed. Cir. 2007); John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir. 2006). The Court of Federal Claims determination as to the money-mandating character of a statute or regulation is also a question of law that we review de novo. See Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006).

Appellants contend that jurisdiction in the Court of Federal Claims is proper because their claims are for money damages under that court's Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1). "The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). The Tucker Act merely confers jurisdiction upon the Court of Federal Claims whenever a substantive right to money damages exists. Id. In order to establish jurisdiction under the Tucker Act for a suit for money damages, "a plaintiff must identify a separate source of substantive law

that creates the right to money damages," in other words, "that source must be 'money-mandating.'" Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" Id. at 1173 (quoting United States v. Mitchell, 463 U.S. 206, 217 (1983)); see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003) (suggesting that the "fair interpretation rule" is a lower standard than an initial waiver of sovereign immunity).

Appellants contend that 31 C.F.R. § 515.205 and 31 C.F.R. § 515.504 create a money-mandating obligation on the part of the United States.[2] We disagree.

Section 515.504 authorizes certain judicial proceedings. That section provides, in part:

> (a) Subject to the limitations of paragraphs (b), (c) and (d) of this section judicial proceedings are authorized with respect to property in which on or since the "effective date" there has existed the interest of a designated national.

> (b) A judicial proceeding is authorized by this section only if it is based upon a cause of action which accrued prior to the "effective date".

31 C.F.R. § 515.504. Section 515.205 was promulgated in March of 1979 because "the holding of . . . assets in non-interest-bearing status is inconsistent with good management of the property and with the policy objectives" of the Treasury regulations. 44 Fed. Reg. 11,768 (Mar. 2, 1979). Section 515.205 provides, in relevant part:

---

[2] Appellants do not identify separate money-mandating sources of law for the civil service retirement annuities sought by Ferreiro and Jeffers and the veteran's benefits sought by Lopez. We understand appellants to contend that sections 515.205 and 515.504 provide the money-mandating source of law with respect to both types of benefits sought.

(a) Except as provided by paragraphs (d), (e) and (f) of this section, or as authorized by the Secretary of the Treasury or his delegate by specific license, any person holding any property included in paragraph (h) of this section is prohibited from holding, withholding, using, transferring, engaging in any transactions involving, or exercising any right, power, or privilege with respect to any such property, unless it is held in an interest-bearing account in a domestic bank . . . .

(g) For purposes of this section, the term interest-bearing account means a blocked account earning interest at no less than the maximum rate payable on the shortest time deposit in the domestic bank where the account is held: *Provided however*, That such an account may include six-month Treasury bills or insured certificates, with a maturity not exceeding six-months, appropriate to the amounts involved . . . .

(j) For the purposes of this section the term person includes the United States Government or any agency or instrumentality thereof . . . .

31 C.F.R. § 515.205. Subsection (h) defines the relevant property as including currency, bank accounts, bank deposits, certain property consisting of "undisputed and either liquidated or unliquidated mature debts, claims, obligations or other evidence of indebtedness, to the extent of any amount that is undisputed and unliquidated or matured," and proceeds from certain negotiable instruments. Id. at § 515.205(h).

Nothing in these provisions creates an affirmative obligation for the United States to pay appellants money damages—these regulations are not money mandating. Section 515.504 authorizes certain judicial proceedings to the extent that the cause of action accrued prior to the effective date of the Cuban Embargo—July 8, 1963.[3] See 31

_____

[3] Appellants repeatedly argue that they seek to have the United States pay their annuity benefits into blocked accounts as required by the Treasury regulations. An order compelling the government to follow its regulations is equitable in nature and is beyond the jurisdiction of the Court of Federal Claims. See Bowen v. Massachusetts, 487 U.S. 878, 905 & n.40 (1988) (citing cases for the proposition that "[W]e have stated that 'the Court of Claims has no power to grant equitable relief'"); but see Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 858-59 (Fed. Cir. 1992) (citing authorities for the proposition that "[w]hile limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money

C.F.R. § 515.201(d) (defining effective date). Section 515.504 is silent with regard to the form of the proceeding and does not expressly mention the United States. Moreover, § 515.504(c) <u>prohibits</u>, rather than mandates payment of money to appellants. <u>See</u> 31 C.F.R. § 515.504(c) ("This section does not authorize or license . . . [a]ny payment or delivery out of a blocked account based upon a judicial proceeding . . . ."). Therefore, this provision standing alone cannot create an obligation for the United States to pay money damages.

Likewise, § 515.205 does not require the payment of money damages. Section 515.205 dictates how certain property belonging to Cuban nationals and held because of the embargo is to be managed. That section "prohibit[s] . . . holding, withholding, using, transferring, engaging in any transactions involving, or exercising any right, power, or privilege with respect to" property of Cuban nationals unless that property "is held in an interest-bearing account in a domestic bank." <u>Id.</u> at § 515.205(a). This regulation addresses only how property is to be handled; it does not confer a substantive right for appellants to receive, or the United States to pay, money damages. The fair interpretation of the regulations relied on by appellants to ground their Tucker Act claims leads to the conclusion that the regulations are not money mandating. <u>See</u>

---

damages). Assuming that appellants are owed benefits, the government's obligation to place such funds into blocked accounts did not exist on the effective date because the regulations requiring placement of certain property into blocked accounts were not promulgated until March of 1979, after the effective date. In any event, there is no indication on the record that any of the appellants are in fact entitled to the benefits they seek. There is no evidence in the record that the Office of Personnel Management or the Department of Veterans Affairs has determined whether any of the appellants satisfy the relevant conditions for eligibility for the benefits they now claim. Therefore, it is unclear whether they had a cause of action which accrued prior to July 8, 1963, a prerequisite to a judicial proceeding under § 515.504. <u>See</u> 31 C.F.R. § 515.504(b).

White Mountain Apache Tribe, 537 U.S. at 472-73; Mitchell, 463 U.S. at 217; Fisher, 402 F.3d 1172-73.

## CONCLUSION

Because the Court of Federal Claims properly concluded that the Treasury regulations relied on by appellants do not subject the United States to liability for money damages, we need not reach the question of whether the CSRA or the veteran's benefits system provide the exclusive administrative remedies for appellants. Our decision moots appellant's appeal of the trial court's denial of class certification. Given the foregoing, the Court of Federal Claims' dismissal of appellants' claims is

<u>AFFIRMED</u>.