# United States Court of Appeals for the Federal Circuit

---

**DAVID LEE SMITH,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-5105

---

Appeal from the United States Court of Federal Claims in No. 11-CV-719, Senior Judge Bohdan A. Futey.

---

Decided: February 22, 2013

---

DAVID LEE SMITH, of Denver, Colorado, pro se.

RYAN M. MAJERUS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and STEVEN J. GILLINGHAM, Assistant Director.

---

Before NEWMAN, MOORE, and REYNA, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

David Lee Smith appeals the decision of the United States Court of Federal Claims, which granted the government's motion for dismissal of Mr. Smith's claim for $5,000,000 for an alleged Fifth Amendment taking effected when Mr. Smith's license to practice law was revoked by the Tenth Circuit and reciprocally by the State of Colorado. The Court of Federal Claims held that in the absence of a money-mandating statute providing for compensation for such government action, the court had no jurisdiction to consider the issues raised. The court also held that because the revocation actions became final no later than 1999, the suit, brought under the Tucker Act, was barred by the six year statute of limitations, 28 U.S.C. § 2501.[1] We affirm.

## DISCUSSION

Mr. Smith was disbarred by the Court of Appeals for the Tenth Circuit, *In re Smith*, 76 F.3d 335, 336 (10th Cir. 1996), followed by reciprocal disbarment by the Fifth Circuit, the United States District Court for the District of Colorado, the Northern District of Texas, and the Colorado Supreme Court.

On May 4, 2007, the Court of Appeals for the Tenth Circuit granted Mr. Smith's motion for reinstatement, provided that he met certain conditions. *In re Smith*, 2007 U.S. App. LEXIS 30356 (10th Cir. May 4, 2007). These conditions were satisfied, and Mr. Smith was reinstated on May 17, 2007. All of the other courts that had reciprocally disbarred Mr. Smith then readmitted him to their bars, except for the Colorado Supreme Court, which declined to readmit Mr. Smith. The United States District Court for the District of Colorado then reversed

---

[1] *Smith v. United States*, 2012 U.S. Claims LEXIS 587 (Fed. Cl. May 30, 2012).

itself and denied Mr. Smith's reinstatement, because he remained disbarred by the Colorado Supreme Court. This denial of reinstatement was affirmed by the Tenth Circuit. *In re Smith*, 329 Fed. App'x. 805, 806 (10th Cir. 2009).

Mr. Smith filed suit in the Court of Federal Claims, seeking compensation and equitable relief. He states that "the United States' actions and decisions—all of which constitute violations of Plaintiff's right to substantive and procedural due process of law and to the equal protection of the laws under the Fifth Amendment—also constitute judicial takings of Plaintiff's private property right to practice law and make a living, in violation of the Fifth Amendment to the Constitution of the United States." Compl. 4-5. The court granted the government's motion to dismiss for lack of jurisdiction.

"We review de novo the Court of Federal Claims's dismissal of a claim for lack of jurisdiction." *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011). On appeal, Mr. Smith challenges (1) dismissal of his complaint for lack of jurisdiction under the Tucker Act, and (2) dismissal of his claims as barred by the statute of limitations. We address each issue in turn.

The Tucker Act provides that the Court of Federal Claims:

> shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). To be cognizable under the Tucker Act, the claim must be for money damages against the

United States, and the substantive law must be money-mandating. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."). The Tucker Act does not, of itself, create a substantive right enforceable against the United States, *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007), but the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States. *Id.* No due process or equal protection claim presented by Mr. Smith meets this requirement. The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). It is equally clear that the Fourteenth Amendment's Equal Protection Clause does not mandate the payment of money. *See id.* The Court of Federal Claims therefore had no jurisdiction over plaintiff's alleged violations of these rights.

Mr. Smith argues that his claims are "judicial takings," based on the Supreme Court's decision in *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 130 S. Ct. 2592 (2010). In that case the Court recognized that a takings claim can be based on the action of a court. *Id.* at 2602 ("In sum, the Takings Clause bars the State from taking private property without paying for it, no matter which branch is the instrument of the taking."). Mr. Smith states that prior to June 17, 2010 when *Stop the Beach* was decided, no cause of action existed for judicial takings. Therefore, he argues, the decisions of the state courts refusing to readmit him to their bars "constitute[] a separate and/or new cause of action."

Mr. Smith also argues that his claim did not become "complete and present," and the six-year statute of limitations did not begin to run, until June 17, 2010, when *Stop the Beach* was decided. He argues that until he had a right of compensation, his claim did not accrue, for no "taking" occurred in respect of the Fifth Amendment. A taking claim first accrues for purposes of the statute of limitations "when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988). Mr. Smith states that the final event was the judicial decision in *Stop the Beach*.

Assuming arguendo that Mr. Smith's licenses to practice law qualify as property for purposes of the Fifth Amendment, the government actions depriving Mr. Smith of this property included the disbarment orders by the Tenth Circuit, the Colorado federal district court, and the Supreme Court of Colorado, entered respectively on February 13, 1996, April 29, 1996 and October 14, 1999. Mr. Smith argues that before *Stop the Beach* no cause of action for this type of judicial taking existed, and cites the proposition that: "Unless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 201 (1997). However, it was recognized prior to *Stop the Beach* that judicial action could constitute a taking of property. *See generally* Barton H. Thompson, Jr., *Judicial Takings*, 76 Va. L. Rev. 1449 (1990) (examining the history and evolution of judicial taking jurisprudence). Contrary to Mr. Smith's assertion that *Stop the Beach* "created a cause of action for judicial takings," the theory of judicial takings

existed prior to 2010. The Court in *Stop the Beach* did not create this law, but applied it. The Court elaborated:

> The Takings Clause . . . is not addressed to the action of a specific branch or branches. It is concerned simply with the act, and not with the governmental actor ("nor shall private property *be taken*"). There is no textual justification for saying that the existence or the scope of a State's power to expropriate private property without just compensation varies according to the branch of government effecting the expropriation. Nor does common sense recommend such a principle. It would be absurd to allow a State to do by judicial decree what the Takings Clause forbids it to do by legislative fiat.

130 S.Ct. at 2601.

Therefore, Mr. Smith's taking claim did not become actionable due to *Stop the Beach*; instead, it became "complete and present" no later than each court's final disbarment order, and the period of limitations started to accrue on those dates.

Mr. Smith also argues that the three recent court actions relating to granting or denying his readmission constituted separate or new causes of action and thus new accrual periods, referring to: (1) the May 12, 2009 decision of the Tenth Circuit affirming the Colorado district court's refusal of readmission; (2) the June 8, 2011 decision of the Supreme Court of Colorado denying Mr. Smith's motion to vacate his disbarment order from that court; and (3) the August 11, 2011 decision of the Colorado federal district court denying Mr. Smith's motion to vacate his disbarment order from the court. However, these decisions were not new takings, for they only reaffirmed the past disbarment decisions and maintained the past 1996 and 1999 decisions. We agree with the Court of Federal

Claims that they did not restart the limitations period. The judgment of the Court of Federal Claims is

## AFFIRMED.

Each party shall bear its costs.