**Patricia WILLITS, et al., Appellants,**

v.

**PEABODY COAL COMPANY, LLC, et al., Respondents.**

**No. ED 98674.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 9, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied May
16, 2013.

Application for Transfer Denied
June 25, 2013.

George A. Barton, Robert G. Harken, Kansas City, MO, Jeffrey J. Lowe, St. Louis, MO, for appellant.

John S. Sandberg, Timothy C. Sansone, St. Louis, MO, for respondent Peabody Coal Company, et al.

Chris Koster, Jeremiah J. Morgan, Jefferson City, MO, for respondent State of Missouri.

Glenn A. Davis, St. Louis, MO, Mason L. Miller, Lexington, KY, for respondent Armstrong Coal Company and Western Diamond.

ROY L. RICHTER, Judge.

Patricia Parrott Willits, William G. Parrott, Jr., and Donald Petrie (collectively, "Appellants") appeal from the trial court's judgment sustaining the Peabody Defendants'[1] and Armstrong Defendants'[2] Joint Motion to Dismiss and denying Appellants' Motion for Summary Judgment. Finding Appellants failed to assert their constitutional arguments at the first opportunity available, we need not consider Appellants' allegations of error absent a showing of plain error. Making no such showing, we thus decline to consider the merits of Appellants' appeal, and affirm the trial court's judgment.

## I. BACKGROUND

The facts, procedural background, and arguments of this case are so vast, academic, and novel, that this case is befitting for a law school exam. Thus, for ease of understanding, we begin, not with the underlying action, but, rather, we proceed in a chronological and systematic manner. However, we only convey the facts necessary for the disposition of the underlying claims as the other facts leading to this appeal have not changed and can be found in other judicial decisions referenced throughout this opinion.

### Willits I

In 1990, Appellants filed suit against Peabody Coal Company ("Peabody")[3] in the United States District Court for the Western District of Kentucky seeking to recover damages for the alleged breach of contract and fraud perpetrated by Peabody, due to the manner in which Peabody calculated the payment of coal royalties under written agreements (dating back to the 1940s) with the Appellants. At issue in that case was the validity of the 1954 Royalty Agreements as applied to Peabody (i.e., Peabody's duty to pay royalties to Appellants). The district court upheld the validity of the 1954 Royalty Agreements, and, thus Peabody's duty to pay certain royalties to Appellants. After final judgment was entered by the district court in an unpublished opinion, Peabody appealed to the United States Court of Appeals for the Sixth Circuit.

In *Willits v. Peabody Coal Co.*, 1999 WL 701916 (6th Cir. Sept. 1, 1999) ("*Willits I*"), the Sixth Circuit affirmed, in relevant part, the district court's finding of the validity of the 1954 Royalty Agreements as

---

1. Peabody Defendants include: Peabody Development Company, LLC; Central States Coal Reserves of Kentucky, LLC; Cyprus Land Creek Land Resources, LLC; Grand Eagle Mining Company; Ohio County Coal Company, LLC; Cyprus Creek Land Company; Beaver Dam Coal Company, LLC; and Peabody Holding Co., LLC.

2. Armstrong Defendants include: Armstrong Coal Company, Inc.; Western Diamond, LLC; Western Land Company, LLC; Ceralvo Holdings, LLC; Armstrong Coal Reserves, Inc.; and Ceralvo Resources, LLC.

3. Peabody is also a named Defendant in the case at bar.

applied to Peabody. *Willits v. Peabody Coal Co.,* 1999 WL 701916, *13–14 (6th Cir.1999) (*"Willits I"*).

## Willits II

At some time after *Willits I,* the Peabody Defendants entered into sales, assignments, and leases of certain lands covered by the 1954 Royalty Agreements with the Armstrong Defendants. Thereafter, neither the Peabody nor Armstrong Defendants paid royalties to the Appellants for the coal mined by the Armstrong Defendants on the land either sold, assigned, or leased to the Armstrong Defendants.

In May 2008, Appellants filed suit against the Peabody Defendants and the Armstrong Defendants in the Circuit Court of the City of St. Louis for an alleged breach of contract based upon the written agreements (dating back to the 1940s) for failure to pay royalties and also seeking declaratory relief regarding future royalty payments. At the trial court, Appellants argued that validity of the 1954 Royalty Agreements had already been conclusively established in *Willits I,* and, thus, the trial court was obligated to give full faith and credit to that judicial decision. Conversely, the Peabody Defendants and Armstrong Defendants contended that *Willits I* dealt with different issues (because the facts had changed since Peabody had entered into certain sales, assignments and leases in the interim) and *Willits I*'s had no bearing on the Armstrong Defendants. Specifically, the Peabody and Armstrong Defendants claimed *Willits I* did not involve the effect of the later sales, assignments and leases with the Armstrong Defendants to the 1954 Royalty Agreements.

At the trial court, cross-motions for summary judgment were filed. On March 29, 2010, the Circuit Court of the City of St. Louis entered its Order and Judgment ("March 2010 Trial Court Judgment") denying Appellants' motion for summary judgment and granting the Peabody Defendants' and Armstrong Defendants' motions for summary judgment. The trial court further held that the Peabody Defendants and Armstrong Defendants had "no further obligation to pay royalties to plaintiffs on coal mined on or after January 31, 2007 pursuant to [the 1954 Royalty Agreements.]"[4]

Appellants appealed the March 2010 Trial Court Judgment to this Court. *See Willits v. Peabody Coal Co., LLC,* 332 S.W.3d 260 (Mo.App. E.D.2010) (*"Willits II"*).[5] Agreeing with the trial court, this court affirmed the March 2010 Trial Court Judgment. *Id.* at 263–65.

Subsequently, Appellants filed their Motion for Rehearing and/or Transfer to the Missouri Supreme Court ("Rehearing/Transfer Motion"). This Court denied Appellants' Rehearing/Transfer Motion on March 1, 2011. Further, Appellant's Application for Transfer to the Missouri Supreme Court ("Application for Transfer") was denied March 29, 2011. The legal file is void of any evidence indicating that Appellants sought certiorari from the Supreme Court of the United States.

---

4. Significantly, the trial court held in its 2010 judgment that the Peabody Defendants' sales and assignments of the lands covered by the 1954 Royalty Agreements with the Armstrong Defendants (that occurred in the interim between *Willits I* and *Willits II)* extinguished Appellants' royalty interests. Thus, while the 2010 judgment never mentioned *Willits I,* the trial court also never expressly invalidated the 1954 Royalty Agreements, but, rather, only applied the 1954 Royalty Agreements under the new and differing facts that had occurred since *Willits I.*

5. *Willits II* was handed down on December 28, 2010.

*Willits III*

Next, Appellants filed this underlying Petition for Declaratory Relief in the Circuit Court of Saint Louis County on August 8, 2011, against numerous defendants:

(1) Peabody Coal Company, LLC and Peabody Energy Corporation and its affiliates [6] (collectively, "Peabody Defendants");

(2) Armstrong Land Company, LLC and its affiliates [7] (collectively, "Armstrong Defendants"); and

(3) the State of Missouri ("State").

In their five-count Petition, Appellants allege five constitutional counts against the State [8]—acting through its judicial branch—in entering the March 2010 Trial Court Judgment and *Willits II:* (1) the State violated Article IV, Section 1 of the United States Constitution (commonly referred to as the "Full Faith and Credit Clause") [9] by failing to give full faith and credit to *Willits I's* holding regarding the validity of the 1954 Royalty Agreements;

(2) the State's actions constituted "judicial takings" in violation of the Takings Clause of the Fifth Amendment to the United States Constitution as made applicable to the State through the Fourteenth Amendment to the United States Constitution,[10] in that the State took private property (or more specifically, altered property rights that a private party had an established interest therein) without just compensation; (3) the State's actions violated the Due Process Clause of the Fifth Amendment to the United States Constitution as made applicable to the State through the Fourteenth Amendment to the United States Constitution,[11] in that Appellants were not afforded their substantive due process rights; (4) the State's actions constituted "judicial takings" in violation of Article 1, Section 28 of the Missouri Constitution (Missouri Constitution's "Taking Clause"); [12] and (5) the State's actions violated Article 1, § 10 of the Missouri Constitution (Missouri Constitution's "Substantive Due Process Clause"),[13] in that

**6.** Refer to n. 1, *supra.*

**7.** Refer to n. 2, *supra.*

**8.** No count in the Petition is directed at either the Peabody or Armstrong Defendants. Rather, the Peabody and Armstrong Defendants, as stated by the Appellants at oral argument, were joined as "affected parties" under Section 527.110, RSMo.

**9.** "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." *See* U.S. Const. art. IV, Section 1.

**10.** "... nor shall private property be taken for public use, without just compensation." *See* U.S. Const. Amend. V; *see also Chicago, B. & Q.R. Co. v. City of Chicago,* 166 U.S. 226, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897) (holding the Takings Clause of the Fifth Amendment applicable to the States).

**11.** "... nor be deprived of life, liberty, or property, without due process of law ..." *See* U.S. Const. Amend. V; *see also* U.S. Const. Amend XIV, Section 1 ("... nor shall any State deprive any person of life, liberty, or property, without due process of law ...").

**12.** "That private property shall not be taken for private use with or without compensation, unless by consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes, in the manner prescribed by law; and that when an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be judicially determined without regard to any legislative declaration that the use is public." *See* Mo. Const. art. I, Section 28.

**13.** "That no person shall be deprived of life, liberty or property without due process of law." *See* Mo. Const. art. I, Section 10.

Appellants were not afforded their substantive due process rights.

The Peabody and Armstrong Defendants filed their Joint Motion to Dismiss—which the State joined—and Appellants filed their Motion for Summary Judgment. After oral arguments before the trial court, on February 29, 2012, the trial court entered judgment sustaining the Peabody and Armstrong Defendants' Joint Motion to Dismiss. The trial court held, *sua sponte,* Appellants' claims against the State were barred under the doctrine of judicial immunity, and Appellants' claims under the United States Constitution did not state a cognizable claim for relief.

This appeal now follows.

## II. DISCUSSION

Appellants raise four points on appeal. In all four points, Appellants argue that the trial court erred in sustaining the Peabody and Armstrong Defendants' Joint Motion to Dismiss. Specifically, Appellants claim that the trial court erred in: (1) sustaining the Joint Motion to Dismiss because *res judicata* does not bar Appellants' constitutional claims; (2) sustaining the Joint Motion to Dismiss because the March 2010 Trial Court Judgment and *Willits II* violated the Full Faith and Credit Clause of the United States Constitution; (3) *sua sponte* dismissing Appellants' Petition based upon the doctrine of judicial immunity because the Peabody and Armstrong Defendants did not raise said argument in their Joint Motion to Dismiss; and (4) *sua sponte* dismissing Appellants' Petition based upon a finding that Appellants' "judicial takings" claim failed to state an actionable claim for relief because the Peabody and Armstrong Defendants did not raise said argument in their Joint Motion to Dismiss.

Finding that Appellants failed to assert their constitutional arguments—thus, their

entire Petition—at the first opportunity, we need not reach the merits of Appellants' arguments. We affirm the trial court's judgment because Appellants have waived their right to bring their constitutional claims.

### Standard of Review

■■■ This Court's review of a trial court's judgment sustaining a motion to dismiss is *de novo. Stein v. Novus Equities Co.,* 284 S.W.3d 597, 601 (Mo.App. E.D.2009). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we apply the following standard of review:

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or a cause that might be adopted in that case.

*State ex rel. Henley v. Bickel,* 285 S.W.3d 327, 329 (Mo. banc 2009) (quoting *Bosch v. St. Louis Healthcare Network,* 41 S.W.3d 462, 464 (Mo. banc 2001)).

■■■ Relevant to this Court's disposition, we may affirm the trial court's dismissal on any ground before the trial court in the motion to dismiss, even if the trial court relied on other grounds in dismissing the claim. *McCarthy v. Peterson,* 121 S.W.3d 240, 243 (Mo.App. E.D.2003). In fact, "[i]f a trial court granting a motion to dismiss reaches a correct result for the wrong reason, we must still affirm." *State ex rel.*

*Hazelwood Yellow Ribbon Comm. v. Klos,* 35 S.W.3d 457, 464–65 (Mo.App. E.D.2000).

### Analysis

█ Under Missouri law, "[i]t is firmly established that a constitutional question must be presented at the earliest possible moment that *good pleading and orderly procedure* will admit under the circumstances of the given case, otherwise it will be waived." *Meadowbrook Country Club v. Davis,* 384 S.W.2d 611, 612 (Mo.1964) (internal quotation omitted) (emphasis added). This rule has been posited by the Supreme Court of Missouri as necessary in order to prevent surprise to the opposing party and to permit the trial court the opportunity to adequately and fairly address the constitutional claim. *Land Clearance for Redevelopment Auth. of Kansas City, Mo. v. Kansas Univ. Endowment Ass'n,* 805 S.W.2d 173, 175 (Mo. banc 1991).

█ For a party to properly raise and preserve a constitutional argument, the litigant must: (1) raise the constitutional argument at the first opportunity; (2) specify the sections of the Constitution (federal or state) claimed to have been violated; (3) state the facts demonstrating the violation; and (4) preserve the argument throughout the appellate process. *City of Eureka v. Litz,* 658 S.W.2d 519, 521 (Mo.App. E.D. 1983).

Appellants argue the constitutional questions arose only after the March 2010 Trial Court Judgment was rendered. Accordingly, Appellants claim their only method of seeking recourse was the filing of a new lawsuit as effectuated in the case at bar. Even when giving the Appellants all reasonable inferences, we disagree. Appellants had multiple opportunities to raise their constitutional arguments: (1) Appellants' constitutional arguments may have been pled in the alternative; (2) throughout the appellate process in *Willits II,* Appellants failed to inform any court of their constitutional claims; and (3) Appellants did not seek certiorari to the United States Supreme Court.

However, we note that this case does not impose upon this Court the opportunity to decide exactly *when* Appellants ought to have brought their constitutional arguments, only that Appellants failed to do so at the first opportunity [14]—which, under Missouri law and in Missouri courts, is not in a separate lawsuit as advanced by Appellants. As such, this Court only demonstrates the wide-ranging possibilities Appellants had in asserting their judicial takings, due process, and other constitutional claims during the pendency of *Willits II.* Exactly *when* such constitutional claims must be brought is left for another day when the facts of a case so require.

**1. Appellants could have raised their constitutional claims at the time of filing their *Willits II* Petition.**

█ Good and orderly pleading in Missouri permits a litigant to set forth two or more statements of a claim alternatively or hypothetically, regardless of the consistency of the alternative or hypothetical claims. *See* Rule 55.10. The effect of Rule 55.10 "is to enable parties, as far as practicable, to submit all their controversies in a single action and *avoid a multiplicity of suits.*"

**14.** We note that in the Peabody and Armstrong Defendants' Joint Motion to Dismiss, Appellants' failure to timely raise their constitutional arguments was asserted: "Plaintiff's failure to raise the constitutional challenge at the earliest moment in the trial court or the Court of Appeals should doom their Petition's attempt to do so in this subsequent proceeding." Thus, this Court may affirm the trial court's grant of dismissal. *See McCarthy, supra.*

*Kaiser Aluminum & Chem. Sales, Inc. v. Lingle Refrigeration Co.,* 350 S.W.2d 128, 131 (Mo.App.1961) [15] (emphasis added).

Thus, in that vein, Appellants could have argued their "judicial takings" and Due Process claims beginning with the filing of their petition in *Willits II. See e.g., Land Clearance for Redevelopment Auth. of Kansas City, Mo.,* 805 S.W.2d at 175–76, (finding that appellant's constitutional claims could not have been so surprising that those claims only became known to appellant after the trial court entered its verdict); *Adams By and Through Adams v. Children's Mercy Hosp.,* 832 S.W.2d 898, 907–08 (Mo. banc 1992) (overruled on other grounds). A reasonable litigant could have pled constitutional claims in the alternative, knowing that a judicial takings and a Due Process claim were inevitable if the Circuit Court of the City of St. Louis ruled adversely to the other claims set forth in the *Willits II* petition. *See* Ian Fein, *Why Judicial Takings Are Unripe,* 38 Ecology L.Q. 749, n. 187 (2011) ("The plaintiff would claim in effect: 'We win our legislative taking claim, but if not, that state court itself will have committed a taking.'"). This requirement that litigants inform the trial court of a real and substantial constitutional argument at first opportunity "would prohibit them [the litigants] from sitting on their hands and waiting for a 'second bite of the apple,' a litigation strategy that imposes negative externalities on the courts and other parties." *Id.* at 777–78.

Here, the evidence manifests an appearance that Appellants sat on their hands. Not once did Appellants apprise any court during the litigation of *Willits II* of their constitutional arguments, but only four months after the Appellants' Application for Transfer was denied by the Missouri Supreme Court in *Willits II,* Appellants commenced the case at bar. Appellants seek a second bite of the apple.

Furthermore, it must be noted that Appellants cannot attempt to camouflage or shield their omissions of their constitutional claims by arguing that their constitutional claims did not become actionable or viable until after *Stop the Beach Renourishment Inc. v. Florida Department of Environmental Protection,* — U.S. —, 130 S.Ct. 2592, 177 L.Ed.2d 184 (2010).[16] In *Stop the Beach,* the United States Supreme Court unanimously held that the Florida Supreme Court had not taken any property from members of a non-profit corporation, comprised of beach front property owners, named Stop the Beach Renourishment ("STBR"). *Id.* at 2613. Specifically, the Court found that Florida's Department of Environmental Protection's project to renourish certain Florida beaches was not unconstitutional or in violation of STBR's property rights. *Id.* However, the Supreme Court's reasoning regarding why there had been no judicial taking was far from unanimous.

The plurality opinion, authored by Justice Scalia, held that a judicial takings occurs, "depending on its [the judicial decision's] nature and extent[,]" whenever a court ruling changes an "established right" of property law. *Id.* at 2602. Justice Scalia stated that an owner should be permitted to sue to overturn an alleged tak-

---

15. Interpreting the identical statutory provision, Section 509.110.

16. *Stop the Beach* was handed down by the Supreme Court of United States on June 17, 2010. Appellants filed their *Willits II* Petition in May 2008. Giving Appellants all reason-

able inferences, they, at the very least, knew or should have known of *Stop the Beach* before the filing of their *Willits II* appeals brief (July 8, 2010) and their Reply Brief (October 4, 2010). However, Appellants made no mention of *Stop the Beach* throughout *Willits II.*

ing, thus rejecting the argument that the sole remedy should be financial compensation. *Id.* at 2607. However, in his view, the aggrieved party challenging a state court ruling should be limited to pursuing the claim through state court appellate process and seeking certiorari to the United States Supreme Court, within the same case. *Id.* at 2609. If the plaintiff was not a party to the original suit, he or she would be permitted to pursue the claim in federal court. *Id.* at 2609–10.

Conversely, in a concurring opinion—on which Appellants premise many of their constitutional arguments—Justice Kennedy argued the Court need not determine the viability of the judicial takings concept in this particular case, but rather, the Due Process Clause was the better alternative or avenue on which to decide such a scenario. *Id.* at 2613–18. However, in contrast to Justice Scalia, Justice Kennedy suggested that the exclusive remedy for a judicial takings would be financial compensation.[17] *Id.* at 2617. Furthermore, Justice Kennedy found it "unclear" how a plaintiff would raise a proper judicial takings claim, and proposed that a party would possibly have to file a second, separate suit challenging the outcome of the first case. *Id.*

Judicial takings and due process jurisprudence existed prior to 2010 and *Stop the Beach.* *See Smith v. United States,* 709 F.3d 1114, 2013 WL 646332, *2–3 (Fed. Cir. Feb. 22, 2013) ("it was recognized prior to *Stop the Beach* that judicial action could constitute a taking of property."); *see also The Debate on Judicial Takings: I Scream, You Scream, We all Scream for Property Rights,* 33 No. 7 Zoning and Planning Law Report 1 (July 2010) ("swimming in the depths of [Supreme]

Court dicta as far back as the mid–19th century was the notion of a court taking property through its own actions."); *see also* James S. Burling, *Judicial Takings After Stop the Beach Renourishment v. Florida Department of Environmental Protection,* 12 Engage: J. Federalist Soc'y Prac. Groups 41, 42 (2011) ("The idea that a *court* can be responsible for a taking is not new. It has been around at least since 1897 in *Chicago, Burlington & Quincy Railroad Co. v. Chicago* [, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897) ] where the Court obliquely referred to a state court being involved in the taking of private property . . ."); *see e.g., Hughes v. State of Washington,* 389 U.S. 290, 296–97, 298, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967) (J. Stewart concurring) ("the Due Process Clause of the Fourteenth Amendment forbids such confiscation by a State, no less through its court than through its legislature"); *Bonelli Cattle Co. v. Arizona,* 414 U.S. 313, 317, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973) (overruled on other grounds); *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 164, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) (indicating the Takings Clause prohibited a court decision from converting private property into public property without just compensation); *Stevens v. City of Cannon Beach,* 510 U.S. 1207, 114 S.Ct. 1332, 1334, 127 L.Ed.2d 679 (1994) (Scalia, J., dissenting from denial of certiorari) ("No more by judicial decree than by legislative fiat may a State transform private property into public property without compensation."). Therefore, Appellants' constitutional claims (or cause of action) did not emerge or become actionable only after the Supreme Court of the United States issued its *Stop the Beach* decision on June 17, 2010, but, rather, was

---

**17.** Peculiarly, Appellants seeks invalidation of *Willits II* and the March 2010 Trial Court Judgment.

452

actionable from the filing of their May 28, 2008 petition.

Thus, Appellants could have raised their constitutional claims at the time of filing their *Willits II* petition.

### 2. Appellants could have raised their constitutional claims in a motion for new trial after the March 2010 Trial Court Judgment.

■ Assuming, *arguendo*, Appellants' contention is correct—that Appellants' constitutional claims arose only after the March 2010 Trial Court Judgment—Appellants still failed in asserting their constitutional claims at the first opportunity.

■ Generally, a constitutional issue raised for the first time in a motion for a new trial is not preserved for appellate review. *Mo. Utils. Co. v. Scott–New Madrid–Mississippi Elec. Co-op.*, 450 S.W.2d 182, 185 (Mo.1970); *see also State v. Blair,* 175 S.W.3d 197, 199 (Mo.App. E.D.2005). However, although it rarely occurs, "a constitutional question may, in a proper case, be first raised in a motion for a new trial." *Mesenbrink v. Boudreau,* 171 S.W.2d 728, 730 (Mo.App.1943); *see also e.g., City of Richmond Heights v. Gasway,* 2011 WL 4368522, *2 (Mo.App. E.D. Sept. 20, 2011) (appellant properly preserved its constitutional argument for appellate review because the constitutional challenge did not arise until after judgment was rendered and the appellant properly raised the argument in its motion for a new trial). After all, the rules of preserving a constitutional claim require the claim to be raised at the first opportunity that *orderly procedure would allow. Callier v. Dir. of*

*Revenue, State of Mo.,* 780 S.W.2d 639, 641 (Mo. banc 1989).

Accordingly, good pleading and orderly procedure would have permitted Appellants to first raise their constitutional claims in a motion for a new trial after the March 2010 Trial Court Judgment was rendered.[18] Thus, after raising their constitutional arguments in a motion for new trial, Appellants could have then raised the same constitutional arguments on appeal during *Willits II.* However, there is no record that Appellants filed a motion for a new trial after the March 2010 Trial Court Judgment. In failing to do so, Appellants precluded the Peabody and Armstrong Defendants from responding and prevented the trial court from addressing the constitutional issues, thereby, failing to preserve their constitutional arguments for appellate review. *Ingle v. City of Fulton,* 260 S.W.2d 666, 667 (Mo.1953) ("if defendant desired to urge and preserve the point that the trial court erred in ruling any constitutional issue which may have been the basis of the trial court's decree, defendant city could and should have called the trial court's attention to the point by assignment of error in the motion for a new trial"); *see also Lohmeyer v. St. Louis Cordage Co.,* 214 Mo. 685, 113 S.W. 1108, 1110 (1908) (overruled on other grounds) ("if the trial court had a chance to correct its error under an appropriate ground in the motion for a new trial, the point would be saved on appeal ... In such case, or cases of a kindred nature, the first door open for a constitutional question to enter would be in the motion for a new trial.").

Therefore, Appellants failed to raise their constitutional claims at first opportu-

---

**18.** The trial court entered its March 29, 2010 judgment after competing summary judgment motions were filed. A motion for new trial may be filed after trial or after entry of any judgment dismissing the claim on the merits.

*See e.g., Edwards v. Hyundai Motor Am.,* 163 S.W.3d 494, 497 (Mo.App. E.D.2005) (motion for new trial filed after court dismissed the petition).

nity in a motion for new trial and, thus, waived the right to assert them now.

### 3. Appellants could have raised their constitutional arguments during the appellate process of *Willits II.*

■■■ A motion for a new trial was not a prerequisite to perfecting an appeal in *Willits II. See* Rule 73.01(d). Thus, again, assuming, *arguendo,* that Appellants were not required to plead their constitutional claims or raise them in a motion for new trial, this Court still finds that Appellants failed to raise their constitutional claims at the first opportunity in accordance with orderly procedure.

Appellants correctly assert that, in Missouri, a constitutional issue cannot be raised for the first time on appeal. *Chambers v. State,* 24 S.W.3d 763, 765 (Mo.App. W.D.2000). Nevertheless, unpreserved points on appeal—including, and especially, constitutional claims—may be reviewed under the plain error review standard. *MB Town Center, LP v. Clayton Forsyth Foods, Inc.,* 364 S.W.3d 595, 602 (Mo.App. E.D.2012); *see also* Rule 84.13(c). Although plain error review of such unpreserved points are solely within this Court's discretion, and, in fact, rarely granted in a civil case, Appellants still had the *opportunity* to raise their constitutional claims. *MB Town Center, LP,* 364 S.W.3d at 602–04. In failing to raise their constitutional claims on appeal, Appellants did not even afford this Court, in 2010, the possibility of reviewing their constitutional claims under plain error.

Continuously, Appellants bypassed the opportunity to allow the courts to consider their constitutional claims. First, Appellants' Rehearing/Transfer Motion and Appellants' Application for Transfer did not raise Appellants' constitutional claims. Second, after the Missouri Supreme Court denied transfer, Appellants did not seek certiorari to the United States Supreme Court.

■■■ Appellants' failure to do either is detrimental to their present argument that they did not waive their constitutional claims. While the United States Supreme Court is not willing to waive the requirement that a federal issue be presented to the state court before it may be raised in the Supreme Court, there is no federal requirement that a federal issue must be raised in the state *trial court* before it is raised in the state appellate courts. *Whitfield v. State of Ohio,* 297 U.S. 431, 435–36, 56 S.Ct. 532, 80 L.Ed. 778 (1936). There is no federal requirement that a constitutional issue be raised at first opportunity. In fact, "the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Osborne v. Ohio,* 495 U.S. 103, 125, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (quoting *Davis v. Wechsler,* 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143 (1923)). Where the constitutional issue could not have been raised by the party in the state court because the issue was first presented in that court's opinion, raising the issue in a petition for rehearing (or transfer), even though it was denied, will suffice in order to sufficiently preserve for U.S. Supreme Court review. *See e.g., Saunders v. Shaw,* 244 U.S. 317, 319–20, 37 S.Ct. 638, 61 L.Ed. 1163 (1917) (a federal question may be noted for the first time in a motion to rehear a matter in a state supreme court if the federal question unanticipatedly arose in that court's opinion); *Herndon v. State of Georgia,* 295 U.S. 441, 443–44, 55 S.Ct. 794, 79 L.Ed. 1530 (1935) ("[T]he question respecting the validity of the statute as applied by the lower court first arose from its unanticipated act in giving to the statute a new construction which threatened rights under the Constitution. There is no doubt that the federal claim was timely if the

ruling of the state court could not have been anticipated and a petition for rehearing presented the first opportunity for raising it."); *State of Missouri ex rel. Missouri Ins. Co. v. Gehner,* 281 U.S. 313, 320, 50 S.Ct. 326, 74 L.Ed. 870 (1930). Thus, while the Appellants' constitutional claims may not have been preserved for appellate review (except for plain error review) by this Court or the Missouri Supreme Court in 2010, review by the United State Supreme Court was possible[19] if Appellants asserted their constitutional claim in either their Rehearing/Transfer Motion or in their Application for Transfer (and then sought certiorari).

In failing, at the minimum, to assert their constitutional arguments in their Rehearing/Transfer Motion or their Application for Transfer, and then failing to file an application for writ of certiorari, we find that Appellants have waived their constitutional arguments.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

ROBERT G. DOWD, JR. P.J., ANGELA T. QUIGLESS, J., concur.

---

**19.** We note that the underlying case of *Stop the Beach* involved this procedural background—landowners sought certiorari to the United State Supreme Court for their constitutional claims after the state supreme court decision was rendered. *Stop the Beach,* 130 S.Ct. at 2600–01. In fact, while Justice Scalia wrote that persons that were not parties in the original state court case could possibly challenge that original decision in a different federal court case (as a judicial takings), Justice Scalia held that the only remedial avenue for parties aggrieved in state supreme courts is a request for certiorari to the United States Supreme Court. *See* Timothy M. Mulvaney, *Uncertainties Remain for Judicial Takings Theory,* 24–Dec Prob. & Prob. 10, 13.