2005 OK CIV APP 13

**Robert OLSON, Plaintiff/Appellant,**

v.

**CONTINENTAL RESOURCES, INC., an Oklahoma corporation; Harold Hamm, individually and as President and Chief Executive Officer of Continental Resources, Inc.; Tom Luttrell, individually and as Vice President of Continental Resources, Inc.; Davis Operating Company, an Oklahoma corporation; and William H. Davis, individually and as President of Davis Operating Company, Defendants/Appellees.**

**No. 99,704.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 17, 2004.

Certiorari Denied April 5, 2005.

Robert Olson, Tulsa, OK, Plaintiff/Appellant, Pro Se.

Glenn A. Devoll, Julia C. Rieman, Gungoll, Jackson, Collins, Box & Devoll, P.C., Enid, OK, for Defendants/Appellees, Continental Resources, Inc., Harold Hamm and Tom Luttrell.

Robert B. Sartin, Adam K. Marshall, Barrow & Grimm, P.C., Tulsa, OK, for Defendants/Appellees, Davis Operating Company and William H. Davis.

Opinion by CAROL M. HANSEN, Judge.

¶ 1 Plaintiff/Appellant, Robert Olson, seeks review of the trial court's order granting summary judgment in favor of Defendants/Appellees, Continental Resources, Inc. and its officers (collectively Continental), and Davis Operating Company and its president (collectively Davis). We affirm because Olson submitted no evidentiary materials establishing a material issue of fact.

¶ 2 Olson sued Continental and Davis to quiet title to an overriding royalty interest (ORRI) in an oil and gas lease and to recover damages for "sham legal process" and "civil conspiracy," based upon the following allegations. The minerals in Section 17, Township 16 North, Range 11 West Indian Meridian, Blaine County, Oklahoma, were leased during the years 1981 to 1984, and Olson acquired an ORRI in the section in 1984. The Matli # 1–17 well was drilled and completed as a well capable of producing oil and gas in commercial quantities in 1984.

¶ 3 Continental acquired a 52% undivided interest in the leases in 1993 and became the operator of the Matli # 1–17 well. In September 1998, Continental set a bridge plug and removed the tubing from the well. In February 1999, Continental agreed with Marshall Oil Corporation (Marshall) to acquire new leases in Section 17 and sent out letters to all of the working interest owners recommending the Matli # 1–17 be plugged. One of the working interest owners refused to consent to plugging, and Continental assigned its interest in the wellbore to that owner. That owner then assigned its interest in the well and the leases to Davis.

¶ 4 Continental filed new leases on Section 17 on September 13, 1999. On September 20, 1999, Davis recompleted the well and brought it back into commercial production. The royalty interest owners under the old leases accepted shut-in royalty payments and accepted royalties from subsequent gas production. In October 1999, Continental sued Davis and Olson to quiet title in its favor. Continental and Davis reached a settlement agreement and dismissed Olson from the suit. The settlement agreement called for Continental and Davis to release the old leases and to operate under the new leases. The releases of the old leases were filed October 2, 2000. An additional well, the Matli # 2–17, has been drilled and put into production. Olson has demanded and been refused payment for his override.

¶ 5 Olson asserted his ORRI on the old leases carried forward to the new leases. He asserted the Defendants used sham legal process by filing new leases over the valid old ones, by filing a lawsuit to drive interest owners out of their original interests, and by releasing the old leases after new ones had been purchased for the purpose of washing out his ORRI. He also asserted the Defendants conspired to release the old leases and operate under the new ones so as to claim his ORRI was no longer valid.

¶ 6 Continental and Davis answered and denied liability. Davis counterclaimed to recover from Olson the sum of $7,957.93, which it claimed it mistakenly paid to Olson as overriding royalty after the old leases expired or were released.

¶ 7 Continental and Davis moved for summary judgment, submitting into evidence the old leases, Olson's ORRI, the new leases, certain pleadings from the 1999 suit, the releases settling the suit, and affidavits from their officers. The old leases provided the lessee could surrender the lease by delivering a release or placing it on record in the proper county. The ORRI did not contain a clause providing it applied to extensions and renewals of the underlying leases. Continental's officer stated the Matli # 1–17 was no longer producing in paying quantities at the time Continental set the bridge plug in 1998. The pleadings from the 1999 suit showed that all the working interest owners were parties to the suit and signed releases of the old leases in settlement of the suit. Davis submitted copies of a check and spreadsheet showing the payment it asserts it mistakenly made to Olson was based on production after the leases were released. ·

¶ 8 Olson objected to the motions for summary judgment, but submitted no evidentiary materials whatsoever. The trial court granted summary judgment to Continental and Davis on Olson's claims, concluding,

> [T]he old leases have quite probabl[y] expired under the terms of said leases for failure to produce. In addition thereto; it is undisputed or admitted that after the new leases were acquired and [Davis] had acquired a[n] interest in the old leases that a quiet title action was filed in Blaine County, that the plaintiff was named a party defendant and that the plaintiff asked for no affirmative relief and as a result thereof, a settlement was reached in said case which resulted in the plaintiff being dismissed in that lawsuit and the old leases voluntarily released, thereby extinguishing any interest the plaintiff owned in the leases.

The trial court granted summary judgment to Davis on its counterclaim against Olson, rendering judgment in the amount of $7,957.93. Olson appeals from this order without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup.Ct. R. 1.36, 12 O.S.2001, Ch. 15, App. 1.

¶ 9 Because a grant of summary judgment involves purely legal determinations, we will review the trial court's decision under a *de novo* standard. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051, 1053. A party may move for summary judgment on the ground that the evidentiary material filed with the motion shows there is no substantial controversy as to any material fact. 12 O.S.Supp. 2002, Ch. 2, App. 1, Rule 13(a). A party opposing summary judgment must file a concise written statement of the material facts as to which a genuine issue exists, along with evidentiary material justifying the opposition to the motion. Rule 13(b). "All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment ... unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material." *Id.* If the trial court determines there is no substantial controversy as to the material facts and one of the parties is entitled to judgment as a matter of law, the court shall render judgment for that party. Rule 13(e).

¶ 10 Davis and Continental's statements of fact were supported by admissible evidence. Olson's statement controverted their assertions but was not accompanied by supporting evidentiary material. Therefore, we will deem Davis and Continental's statements admitted for the purpose of summary judgment.

¶ 11 An overriding royalty interest is created out of the working interest in an oil and gas lease. It is an interest in the lease out of which it is carved, and cannot be a property interest of greater dignity than the lease itself. *XAE Corp. v. SMR Property Management Co.*, 1998 OK 51, 968 P.2d 1201, 1206–1207. Therefore, the overriding royalty interest does not survive termination of the lease, absent fraud, breach of a fiduciary relationship, or an agreement otherwise. *DeMik v. Cargill*, 1971 OK 61, 485 P.2d 229, 233, and *Probst v. Hughes*, 1930 OK 57, 143 Okla. 11, 286 P. 875, 879.

¶ 12 The assignment of an overriding royalty interest out of the leasehold interest does not by itself create a fiduciary

relationship between assignor and assignee. *Brannan v. Sohio Petroleum Co. (Brannan II)*, 260 F.2d 621, 622 (10th Cir.1958) (applying Oklahoma law).[1] Therefore, there is no relationship of trust and confidence between assignor and assignee which proscribes the lessee from acquiring a new lease, unburdened by the overriding royalty interest, from the owner of the land to take effect upon the expiration of the assigned lease. *Brannan v. Sohio Petroleum Co. (Brannan I)*, 248 F.2d 316, 318 (10th Cir.1957). However, a fiduciary relationship may arise from other factors, such as when no consideration is paid for an assignment at the time of transfer and the assignor is to be paid from production. *Rees v. Briscoe*, 1957 OK 174, 315 P.2d 758, 763.

■ ¶ 13 The rights of an overriding royalty owner in future leases are protected if the assignment contains a clause providing the override applies to extensions or renewals of the original lease from which it is carved. For example, in *Probst v. Hughes*, 1930 OK 57, 286 P. 875, 876, 143 Okla. 11, the agreement stated the overriding royalty interest would "apply as to all modifications, renewals of such lease or extensions that the assignee, his successors or assigns may secure." The Court held a second lease taken by the lessee from the fee owner before expiration of the first lease was a renewal of the first lease, even though the well had ceased producing and was plugged.

¶ 14 Similarly, in *Thornburgh v. Cole*, 1949 OK 167, 207 P.2d 1096, 201 Okla. 609, the assignment of an overriding royalty interest in a coal mining lease provided the override would apply to extensions, renewals, or modifications of the existing leases. The Court ruled future leases to the grantor of the interest or its successors would be bound by the override. 207 P.2d at 1100. The *Thornburgh* Court contrasted the facts in its case with those in *La Laguna Ranch Company v. Dodge*, 18 Cal.2d 132, 114 P.2d 351, 353. There "the lease provided that the lessee might surrender the lease by quit-claiming to the lessor. This was done and the overriding royalty interest was thus extinguished, because the agreement did not provide that the overriding royalty should apply to renewal, extension or modification of the lease." *Thornburgh*, 207 P.2d at 1100.

■ ¶ 15 The facts in the record before us are like those in *La Laguna Ranch*. The oil and gas leases specifically provided the lessee could at any time surrender the lease or any part of it by delivering or mailing a release to the lessor, or by placing a release of record in the proper county. Olson's ORRI did not provide it applied to extensions or renewals of the original lease. There are no circumstances giving rise to a fiduciary relationship between Olson and Continental or Davis. Therefore, when all the working interest owners released the leases on Section 17, the lease from which Olson's ORRI was carved ceased to exist, and his ORRI did not survive the termination of the lease. The trial court did not err in granting summary judgment to Davis and Continental on Olson's claim for quiet title and to Davis on its claim for overpaid royalties against Olson.

■ ¶ 16 Olson also sought to recover for sham legal process and civil conspiracy. Sham legal process is a criminal matter. It means the use of an instrument that is not lawfully issued and that purports to be a summons, subpoena, judgment, arrest warrant, search warrant, or other order of a court or that purports to assert jurisdiction or authority over or determine or adjudicate the legal or equitable status, rights, duties, powers, or privileges of any person or property. 21 O.S.Supp.2003 § 1533(H)(1)(a) and (b). The statutes relating to quiet title allow an attorney fee to the prevailing party if a party alleges the adverse claim is sham legal process as defined in § 1533 above. 12 O.S. 2001 § 1141(B). Olson submitted no evidence Continental or Davis used any instrument meeting the statutory definition of sham legal process. The trial court did not err in granting summary judgment against Olson on this claim.

■ ¶ 17 In *Brock v. Thompson*, 1997 OK 127, 948 P.2d 279, 294 (footnotes omitted), the Court stated, "A civil conspiracy consists

---

1. *See also Hawkins v. Klein*, 1926 OK 819, 255 P. 570, 575, 124 Okla. 161, and 3 Summers, The Law of Oil and Gas, § 554, nn. 61–62 (Perm. ed. Supp.2003).

of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. There can be no civil conspiracy where the act complained of and the means employed are lawful." Olson submitted no evidence Continental or Davis pursued an unlawful purpose or used unlawful means. The trial court did not err in granting summary judgment against Olson on this claim.

¶ 18 For the foregoing reasons, the trial court's judgment is AFFIRMED.

JOPLIN, J., and MITCHELL, P.J., concur.