Patricia **WILLITS, et al., Appellants,**

v.

**PEABODY COAL COMPANY, LLC, et al., Respondents.**

**No. ED 94777.**

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 28, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 2011.

Application for Transfer Denied March 29, 2011.

Gerard Carmody, St. Louis, MO, George A. Barton, Kansas City, MO, for appellant.

John S. Sandberg, Thomas B. Weaver, St. Louis, MO, Mason L. Miller, Lexington, KY, for respondent.

CLIFFORD H. AHRENS, Judge.

Patricia Willits, William G. Parrott, Jr., and Donald Petrie, Trustee of the PPW Royalty Trust, collectively "Plaintiffs" appeal from the judgment of the trial court denying their motion for partial summary judgment and granting the motions for summary judgment of the Peabody Defendants and the Armstrong Defendants.[1] Finding no error, we affirm.

In 1946, W.G. Parrott, father of William G. Parrott, Jr. and Patricia Willits, conveyed certain lands and mineral rights lo-

---

1. The Peabody Defendants consist of: Peabody Coal Company, LLC, Peabody Energy Corporation, Peabody Development Company, LLC, Peabody Holding Company, LLC, Central States Coal Reserves of Kentucky, LLC, and Beaver Dam Coal Company, LLC. The Armstrong Defendants consist of: Armstrong Coal Company, Inc. and Western Diamond, LLC.

cated within a 6,000–plus acre tract in Ohio County, Kentucky, to the Beaver Dam Coal Company ("Beaver Dam Coal"). Beaver Dam Coal promptly leased the coal mining rights on those lands back to W.G. Parrott, who then assigned the coal leases ("Beaver Dam Lease") to the Rough River Coal Company ("Rough River"), a company incorporated by W.G. Parrott. Rough River agreed to pay W.G. Parrott and his wife an overriding royalty of five percent of the average gross realization from coal mined and sold by Rough River, its successors and assigns, from any land in the First and Third Boundary, as described in the contract. In 1947, Rough River assigned the coal leases to the Alston Coal Company ("Alston Coal"), another corporation controlled by W.G. Parrott. W.G. Parrott and his wife entered into new royalty agreements with Alston Coal in 1954 ("1954 Royalty Agreements") that changed the royalty obligation to two percent of gross realization on coal produced by strip-mining, and one percent on coal mined by underground mining methods, and added a fourth boundary area. The Parrotts also released Alston Coal from its obligations under the previous royalty agreement. The 1954 Royalty Agreements granted royalty rights to the Parrotts on any coal mined by Alston Coal, its successors and assigns from lands within the First, Third, and Fourth Boundaries. At the time of the execution of the 1954 Royalty Agreements, Alston Coal did not have a fee simple interest in any of the land within the boundaries set forth in the 1954 Royalty Agreements.

Peabody Coal ("Peabody") acquired Alston Coal in 1956, and assumed its obligations and liabilities. The Parrotts assigned their overriding royalty interests to their children in 1959. From 1956 to 2005, the Beaver Dam Lease was assigned to several Peabody entities. In 2005, the Beaver Dam Lease was assigned to Cen-

tral States Coal Reserves of Kentucky, LLC ("Central States"). At all times during the period from 1946 until 2005, the lands subject to the Beaver Dam Lease were held in fee simple by Beaver Dam Coal, the lessor. However, in 2002, Peabody Holding Company, LLC, a Peabody subsidiary, acquired Beaver Dam Coal. On January 18, 2007, Beaver Dam Coal, the lessor, and Central States Coal Reserves of Kentucky, the lessee of the Beaver Dam Lease, terminated those leases by agreement.

There were also properties held as tenants in common. W.G. Parrott and Pauline Parrott conveyed one-half interests in two tracts of land, the Bernheim property and the Green River property, to both Rough River and to the Beaver Dam Coal Company as tenants in common as to both properties. Rough River conveyed its one-half tenancy in common interests in the Bernheim and Green River properties to Alston Coal in 1947. Alston Coal owned these one-half tenancy in common interests at the time that it executed the 1954 Royalty Agreements, which encompassed those properties. By 2005, the Peabody Defendants had also acquired Alston Coal's tenancies in common. On September 13, 2007, Beaver Dam Coal and Central States Coal Reserves, which had acquired the Alston tenancies in common, sold them to Cyprus Creek Land Resources ("Cyprus Creek") one of the many Peabody companies, thereby joining the co-tenancies. On March 31, 2008, Cyprus Creek, sold the fee simple to Western Diamond, one of the Armstrong Defendants. Since April 2008, neither the Peabody Defendants nor the Armstrong Defendants have paid royalties to the Plaintiffs on coal mined and sold by the Armstrong Defendants.

On May 28, 2008, the Plaintiffs filed a petition against the Peabody Defendants

and the Armstrong Defendants that asserted breach of contract claims based on the 1954 Royalty Agreements for failure to pay royalties, and also seeking a declaratory judgment regarding future royalty payments. The Peabody Defendants and the Armstrong Defendants separately filed motions for summary judgment, and Plaintiffs filed a motion for partial summary judgment. After a hearing on these motions, the trial court granted summary judgment in favor of the Peabody Defendants and the Armstrong Defendants, and denied Plaintiffs' motion for partial summary judgment. Plaintiffs now appeal from this judgment.

Appellate court review of a summary judgment is essentially *de novo*. *Moore Automotive Group, Inc. v. Goffstein*, 301 S.W.3d 49, 52 (Mo. banc 2009). Summary judgment is proper only where the movant has demonstrated that " 'there is no genuine dispute as to the facts' " and that " 'the facts as admitted show a legal right to judgment for the movant.' " *Id.* (quoting *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 380 (Mo. banc 1993)). It is the movant's burden to establish both a legal right to judgment and the absence of any genuine issue of material fact necessary to support the claimed right to judgment. *Id.*

■ The parties do not dispute the facts, but rather the legal effect of the facts.[2] We will consider Plaintiffs' first and second points relied on together. In their first point relied on, Plaintiffs contend that the trial court erred in granting summary judgment in favor of Defendants because their royalty rights are not limited to coal mined under the Beaver Dam Lease, in that the 1954 Royalty Agreements provide that their royalty rights extend to all coal mined from any of the lands in the boundaries by Alston Coal, its successors, and assigns. In their second point relied on, Plaintiffs assert that the trial court erred in granting summary judgment in favor of Peabody Defendants and the Armstrong Defendants because their royalty rights "are not limited to the land or coal mining rights in the boundaries which Alston Coal Company owned or leased on November 17, 1954, in that:" the 1954 Royalty Agreements state expressly that their royalty rights extend "to all coal mined from any of the lands in the boundaries by Alston Coal Company, its successors and assigns" and there is no law of property that prevents the Plaintiffs from enforcing the 1954 Royalty Agreements in accordance with the express terms of those agreements.[3]

■ As the trial court observed, quoting from a memorandum filed by Plaintiffs,

2. The trial court found that the royalty agreements were executed in Kansas, created interests in mineral rights in Kentucky, and were performed or to be performed at least in part in Missouri, where the Peabody defendants are headquartered. All of the parties apparently agreed that "either the law of Missouri or the law of Kentucky should control, but do not insist on one or the other." The trial court was "unable to descry any 'controlling authority' in either Missouri or Kentucky," and relied on "general law." Plaintiffs and Armstrong Defendants appear to agree that the relevant substantive law of contractual interpretation of Missouri and Kentucky is essentially the same. The Peabody Defendants do not argue this issue.

3. In the argument section of their brief, Plaintiffs argue that the Peabody Defendants and the Armstrong Defendants failed to raise what the Plaintiffs term "their erroneous 'tenancy in common' defense" in their motions for summary judgment, but rather raised this issue in their reply briefs in support of their motions, and that the trial court erroneously considered this issue. Plaintiffs did not raise this issue in their points relied on, and we need not consider this issue as it is not preserved for appellate review. Rule 84.04(e); *Husch & Eppenberger, LLC v. Eisenberg*, 213 S.W.3d 124, 131 (Mo.App.2006).

" 'the central argument in this case hinges upon whether the 1954 royalty agreements between Alston Coal Co. and William and Pauline Parrott are a product of and dependent upon the Beaver Dam lease and the properties then held by Beaver Dam and Rough River as tenants in common.' " As to the nature of the royalty interests, we agree with the trial court's determination that the royalty interest based on the Beaver Dam Leases is an overriding royalty interest. An overriding royalty interest is created out of the working interest in a mineral lease. *See Olson v. Continental Resources, Inc.,* 109 P.3d 351, 354 (Okla. Civ.App.2004). "It is an interest in the lease out of which it is carved, and cannot be a property interest of greater dignity than the lease itself." *Id.* Accordingly, the overriding royalty interest cannot survive termination of the lease, absent fraud, breach of a fiduciary relationship, or an agreement otherwise. *Id. See also Ritter v. Bill Barrett Corporation,* 351 Mont. 278, 210 P.3d 688, 690–91 (2008) ("if a party wishes an overriding royalty to survive the expiration of the lease or sublease, he must include an express provision stating such."). The royalty interest based on the Beaver Dam Leases cannot survive the termination of those leases. There is no allegation of fraud or breach of a fiduciary relationship, and there is no express provision otherwise, despite the arguments of Plaintiffs for a broad reading of the 1954 Royalty Agreements.

■ Regarding the Bernheim and Green River properties, there is no dispute about the facts of the creation of the tenancies in common, the property transfers, or the creation of the royalty interest in the tenancies in common in those properties by Alston Coal in the 1954 Royalty Agreements. In a tenancy in common, each co-tenant owns a separate, fractional share of undivided property. *United*

*States v. Craft,* 535 U.S. 274, 279–80, 122 S.Ct. 1414, 1421, 152 L.Ed.2d 437 (2002); *State v. Hoskins,* 357 Mo. 377, 208 S.W.2d 221, 222 (1948). Each co-tenant has the right to unilaterally alienate his interest through gift, sale, or encumbrance; to exclude third parties from the property; and to receive an appropriate portion of any income derived from the property. *Craft,* 535 U.S. at 279–80, 122 S.Ct. at 1421. There is no dispute that all of the tenancies in common for the Bernheim and Green River properties were sold to Cyprus Creek, thereby uniting the interests in one owner. Uniting the interests in one owner terminated the tenancy in common, creating a fee simple interest in severalty. *See Davis v. Broughton,* 369 S.W.2d 857, 859 (Mo.App.1963); *Sigman v. Rubeling,* 271 S.W.2d 252, 255 (Mo.App.1954). *See also Shelton v. Vance,* 106 Cal.App.2d 194, 234 P.2d 1012, 1014 (1951); *Sullivan v. McLenans,* 2 Iowa 437 (Iowa 1856); *Smith v. Smith,* 249 N.C. 669, 107 S.E.2d 530, 535–37 (1959); 86 C.J.S. *Tenancy in Common* section 15 (2009) and 2 Bl.Comm. 194.

■ The issue is what becomes of a royalty interest granted by a tenant in common, Alston Coal, to a third party and its assigns, the Plaintiffs, when the tenancies in common are extinguished by severalty ownership of the fee simple, where there is no claim of fraud, bad faith, or lack of fair dealing that might rouse concerns in equity. It is a basic principle that tenants in common are not principal and agent to each other, and they are not partners, and accordingly, neither tenant in common can bind the estate or person of the other by any act relating to the common property when dealing with third parties. *Timothy v. Hicks,* 237 Mo.App. 126, 164 S.W.2d 99, 105 (1942) (quoting 62 C.J., Section 209, page 533). Consequently, when Alston Coal granted a royalty interest from its tenancies in common for the

Bernheim and Green River properties, it did not bind its tenant in common, Beaver Dam Coal or its interest in its tenancies in common. What then, becomes of the royalty interest granted by Alston Coal, binding on its ownership interest, but not that of its tenant in common, when the tenancy in common is terminated? This precise question does not appear to have been addressed by Missouri or Kentucky courts. The closest case on point is *J.M. Shober Farms, Inc. v. Merrill*, 179 Pa.Super. 446, 115 A.2d 384 (1955), which essentially held that a royalty interest created by a tenant in common could not bind the subsequent fee simple owner of the entire interest in the parcel. The trial court explained it by stating "when tenancies in common are joined in a single owner, the prior undivided fractional interests are extinguished, merged as it were, in the subsequent fee." The trial court further noted that the Pennsylvania appellate view was in accord with the common law of property, and that the common law of property applies in Missouri pursuant to section 1.010 RSMo 2000. We agree.

Plaintiffs cite a number of cases for the proposition that the 1954 Royalty Agreements granted them perpetual non-participating royalties that should have survived the extinguishment of the Beaver Dam Leases and the tenancies in common of the Bernheim and Green River properties. Those cases are distinguishable. As the trial court stated, "[t]he leasehold became extinct, the tenancy in common was dissolved, and the 1954 royalty agreements died with it." Alston Coal could not grant greater rights in mineral interests than it held as less than a fee owner. Points denied.

We need not address Plaintiffs' third and fourth points relied on, which raise issues as to whether the Armstrong Defendants are the assigns or successors to the Peabody Defendants and the obligations arising from the 1954 Royalty Agreements. We held above that the royalty interests of Plaintiffs terminated with the termination of the Beaver Dam Leases and the termination of the tenancy in common, when the interests were held by the Peabody Defendants. If the Peabody Defendants have no liability, the Armstrong Defendants, even if successors and/or assigns of the Peabody Defendants could not be liable.

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY, J., concur.