# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1464

_____

The PPW Royalty Trust Dated September 27, 1989, by and through Donald G. Petrie, its Trustee; The Estate of Patricia P. Willits, by and through Donald G. Petrie, its Personal Representative; The Estate of William G. Parrott, Jr., by and through Peggy Parrott, its Personal Representative; The Patricia P. Willits Trust Dated July 31, 2003, by and through Donald G. Petrie, its Trustee; The Parrott Revocable Trust dated March 16, 2012, by and through Peggy Parrott, its Trustee; The David E.C. Parrott Irrevocable Trust Dated November 23, 2009, by and through Donald G. Petrie, its Trustee; The Delyn P. Drake Irrevocable Trust Dated November 23, 2009, by and through Donald G. Petrie, its Trustee; The Dianne P. Spook Irrevocable Trust Dated November 23, 2009, by and through Donald G. Petrie, its Trustee; The Pamela P. Waugh Irrevocable Trust Dated November 23, 2009, by and through Donald G. Petrie, its Trustee; The William G. Parrott III Irrevocable Trust Dated November 23, 2009, by and through Donald G. Petrie, its Trustee,

*Plaintiffs - Appellants*,

v.

George A. Barton; The Law Offices of George A. Barton, P.C.; Gerard T. Carmody; David H. Luce; Carmody MacDonald, P.C.; John C. Holstein; Polsinelli, P.C.,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 19, 2015
Filed: August 11, 2016
_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

The PPW Royalty Trust and nine additional trusts and estates (collectively, "the Trusts") claim rights as the beneficiaries, successors, or assigns of the owners of coal mining royalty interests in Kentucky. Over the course of two-and-a-half decades, the Trusts and their predecessors have sued in both federal and state court over the scope of their rights to receive royalty payments. In this case, the Trusts sued their former attorneys, alleging legal malpractice based on the adverse outcome of one of these cases. The Trusts assert that the attorneys committed malpractice by failing to raise preclusion arguments based on the outcome of a prior case. The Trusts also assert that the attorneys committed malpractice by failing to raise certain constitutional arguments at an earlier phase. The district court[1] dismissed the Trusts' complaint, concluding that assertion of these arguments would not have changed the outcome of the case. We affirm.

I.

This case arises out of a lengthy and complex series of events involving coal mining rights in Kentucky. In 1946, W.G. Parrott conveyed certain land in Ohio County, Kentucky, to Beaver Dam Coal Company, and Beaver Dam leased the coal mining rights on that land back to Parrott. *Willits v. Peabody Coal Co.* (*Willits I*), Nos. 98-5458, 98-5527, 1999 WL 701916, at *1 (6th Cir. Sept. 1, 1999). This lease

_____

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri.

-2-

is described by the parties as the Beaver Dam lease. At the time, Parrott controlled two companies known as Rough River Coal Company and Alston Coal Company. Parrott assigned his mining rights under the Beaver Dam lease to Rough River in exchange for a royalty interest on coal mined by Rough River within certain defined boundary areas. In 1947, Rough River assigned the coal leases to Alston. *Id.*

In 1954, Alston and Parrott substituted two new royalty agreements for those that arose from Parrott's transaction with Rough River. *Id.* One agreement granted royalties to Parrott and his wife, Pauline, and the other granted royalties to Pauline and the couple's children, Patricia Willits and William G. Parrott, Jr. Under the new agreements, Alston agreed to pay the Parrotts a portion of the average gross realization on coal mined within certain defined boundary areas. The 1954 royalty agreements granted the Parrotts a smaller royalty percentage than the original 1946 agreement and expanded the boundary areas covered by the agreement. Peabody Coal Company later assumed Alston's obligations and liabilities under the royalty agreements. The Parrotts assigned their royalty interests in equal shares to their children in 1959, and the Parrott children later distributed their interests to a collection of trusts.

## A.

In 1990, Willits, Parrott, Jr., and the PPW Royalty Trust (collectively, "the Parrott plaintiffs") sued Peabody Coal Company in federal court in the Western District of Kentucky, alleging breach of contract and fraud based on underpayment of royalties. *See Willits I*, 1999 WL 701916, at *2. Attorney George Barton represented the Parrott plaintiffs in *Willits I*. Peabody filed a counterclaim, contending that the royalty agreements violated the rule against perpetuities. *Id.* Peabody argued that the agreements purported to grant the Parrott plaintiffs the right to receive royalties based on coal mined from land within the boundary areas but

acquired by Alston—and later Peabody—after the date of the agreement. For this reason, Peabody asserted, the agreements violated the rule against perpetuities.

On July 3, 1991, the district court issued an order dismissing Peabody's counterclaim. The court observed that "the agreements in question create no interest whatsoever in land or in the coal leases themselves" but rather created "obligations personal to the parties to those agreements." The court concluded that "[t]he Royalty Agreements therefore are not subject to and do not violate the Rule Against Perpetuities, whether they cover 'after-acquired' property or not." The case proceeded on other claims.

Several years later in 1997, the district court revisited its 1991 order. The Parrott plaintiffs argued that the court's 1991 order dismissing Peabody's counterclaim necessarily held that the royalty agreements required Peabody to pay royalties for coal mined from "after-acquired" property. The district court observed that the 1991 order did not determine whether the agreements covered "after-acquired" property and that a 1995 order found a genuine issue of material fact on that question. Yet the court noted that "the defendant has conceded that, barring its statute of limitations and relation back objections, summary judgment for the plaintiff is appropriate." Relying on that concession and rejecting Peabody's statute of limitations argument, the court granted summary judgment for the Parrott plaintiffs on royalty claims based on coal mined from three "after-acquired" properties (Count VIII of the Third Amended Complaint).

The case went to trial on the remaining claims, and the jury returned a verdict in favor of the Parrott plaintiffs on one breach of contract claim and in favor of Peabody on all remaining claims. *Id.* at *4. Both parties appealed to the Sixth Circuit. Peabody challenged, among other things, the district court's 1991 order dismissing its counterclaim. *Id.* at *5. The Sixth Circuit affirmed the district court's determination that the royalty agreements did not violate the rule against perpetuities, but declined

to accept "the district court's reasoning that the perpetual nonparticipating royalty interests at issue are contractual rights, as opposed to interests in property." *Id.* at *19. The court of appeals concluded instead that "the royalty interest vested when it was created, even though it was uncertain in the enjoyment." *Id.* at *20. The court thus determined that "[t]he royalty holder owns a fee simple interest in Peabody's contingency" and that none of the plaintiffs' claims were precluded by operation of the rule against perpetuities. *Id.*

The Sixth Circuit also reversed the district court's determination on the statute of limitations that governed the Parrott plaintiffs' claim concerning after-acquired property. *Id*. at *19. On remand, therefore, the district court entered an amended judgment in favor of Peabody on the Parrott plaintiffs' claim for royalties from the three after-acquired properties. Add. 42.

B.

After *Willits I*, Peabody engaged in several land transactions. Peabody acquired the Beaver Dam Coal Company and its interests within the defined boundaries. In 2007, the Beaver Dam lease, which predated and was subject to the 1954 royalty agreements, was terminated by agreement. The mining rights under that lease merged with the fee simple property interest, then owned by Peabody through its Beaver Dam subsidiary. Additional tenancies in common that predated and were subject to the 1954 agreements were also joined into a single owner in one of Peabody's subsidiaries, terminating the tenancies in common. Peabody sold the land that formerly made up the tenancies in common to the Armstrong Coal Company, which then began mining coal from the property without paying royalties to the Parrott plaintiffs.

In 2008, the Parrott plaintiffs sued Peabody and Armstrong in Missouri state court, alleging that the companies had failed to pay royalties under the 1954

agreements. The Parrott plaintiffs also sought a declaratory judgment that the agreements required the companies to pay royalties on coal mined by Armstrong as its "successor or assignee." *Willits v. Peabody Coal Co.* (*Willits II*), 332 S.W.3d 260, 262-63 (Mo. Ct. App. 2010). Peabody and Armstrong moved for summary judgment, arguing that the termination of the Beaver Dam lease and the tenancies in common ended the royalty agreements and that Armstrong was not an assign of Peabody. Attorney Barton again represented the Parrott plaintiffs in *Willits II*; he was joined as co-counsel by attorneys Gerard Carmody and David Luce.

The Missouri circuit court granted summary judgment for Peabody and Armstrong. The court observed that the case hinged on "whether the 1954 royalty agreements between Alston Coal Co. and William and Pauline Parrott are a product of and dependent upon the Beaver Dam lease and [the tenancies in common]." The court noted that "[a]s a matter of law, the royalty obligation cannot encumber anything greater than the estate held by Alston Coal Co. at the time the agreement was entered into and may only obligate future assignees to the extent that the Alston interests continue to exist." Because Alston held interests as a lessee and tenant in common when it entered into the 1954 royalty agreements, the court determined that Alston "lacked the capacity to grant anything but an overriding royalty," and could not "obligate subsequent fee simple landowners" to pay royalties.

The court went on to conclude that the royalty interests "depend[ed] on the existence of the original Parrott mineral lease and the tenancies in common." Therefore, the termination of the Beaver Dam lease and the tenancies in common extinguished the plaintiffs' royalty interests in question. The court further determined that Armstrong was not a successor or assign of Peabody because the obligations imposed by the agreements did not survive the termination of the underlying property interests. The circuit court thus granted summary judgment for Peabody and Armstrong, having concluded that they "have no further obligation to pay royalties to plaintiffs on coal mined on or after January 31, 2007."

-6-

The Parrott plaintiffs appealed to the Missouri Court of Appeals. The court of appeals agreed that the royalty interest did not survive the termination of the Beaver Dam lease and the tenancies in common. *Id.* at 264-65. The court characterized the royalty interest as an "overriding royalty interest" which "is an interest in the lease out of which it is carved, and cannot be a property interest of greater dignity than the lease itself." *Id.* at 264 (quoting *Olson v. Continental Res., Inc.*, 109 P.3d 351, 354 (Okla. Civ. App. 2004)). Because the court concluded that the royalty interest had been terminated, the court did not reach the question whether Armstrong was an assign or successor of Peabody under the royalty agreements. *Id.* at 265.

After the decision of the Missouri Court of Appeals, the Parrott plaintiffs retained attorney John Holstein to act as co-counsel with attorneys Barton, Carmody, and Luce to file a motion for rehearing and/or transfer to the Missouri Supreme Court. In their motion, the Parrott plaintiffs argued that the Missouri Court of Appeals decision in *Willits II* contradicted the unambiguous terms of the 1954 royalty agreements and case law regarding the interpretation and enforcement of unambiguous contracts. They further argued that the *Willits II* court's decision "overlooks, does not address, and directly conflicts with [*Willits I*]." The Missouri Court of Appeals denied both rehearing and transfer. *Id.* at 260. The Parrott plaintiffs then filed an application for transfer with the Missouri Supreme Court, which was also denied. *Id.*

C.

Dissatisfied with the outcome of *Willits II*, the Parrott plaintiffs filed another lawsuit against Peabody, Armstrong, and the State of Missouri in Missouri state court. *Willits v. Peabody Coal Co.* (*Willits III*), 400 S.W.3d 442, 447 (Mo. Ct. App. 2013). Attorney Barton represented the Parrott plaintiffs in *Willits III*. The Parrott plaintiffs alleged several constitutional claims against the State of Missouri: that the *Willits II* courts had violated the Full Faith and Credit Clause by refusing to adhere to the earlier

-7-

federal court judgments in *Willits I*, that the decisions of *Willits II* courts were an unconstitutional judicial taking under both the federal and Missouri constitutions, and that the *Willits II* decisions violated the Parrott plaintiffs' substantive due process rights under both the federal and Missouri constitutions. The Parrott plaintiffs did not assert any claims against Peabody or Armstrong in *Willits III* but joined them as "affected parties" under Missouri law. *Id.* at 447 n.8.

Peabody, Armstrong, and the State of Missouri moved to dismiss the complaint. The circuit court questioned whether the State could be liable for acts of the state judiciary, but determined in any event that the *Willits II* courts exercised a "judicial function" in deciding the previous cases and were therefore protected by judicial immunity. The court further reasoned that the Parrott plaintiffs raised the issue of full faith and credit in *Willits II* and that the argument was rejected by both the trial court and the appellate court. The court concluded that the Parrott plaintiffs did not establish a due process violation and that the judicial takings claims failed because "[t]he State did not initiate the action, change existing law, or derive any benefit as the result of the decision." As a result, the circuit court granted the defendants' motion to dismiss. The Missouri Court of Appeal affirmed on the alternative ground that the Parrott plaintiffs waived their constitutional arguments by failing to raise them at the first opportunity in *Willits II*. *Id.* at 448.

D.

This lawsuit was next. Willits and Parrott, Jr. died in 2012. Their estates and a collection of trusts that received their respective royalty interests sued the attorneys who represented the Parrott plaintiffs in the prior actions. As relevant to this appeal, the Trusts alleged that the former attorneys committed malpractice by failing to raise preclusion arguments in *Willits II* based on the federal court judgments in *Willits I*. The Trusts further argued that their attorneys were negligent in waiving arguments based on theories of judicial takings and substantive due process in *Willits II*. The

attorneys moved to dismiss the complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

The district court found that the Trusts failed to state a malpractice claim based on failure to assert preclusion arguments, because *Willits I* and *Willits II* did not decide the same issues and claims. The court observed that *Willits I* addressed whether the 1954 royalty agreements were void under the rule against perpetuities. *Willits II*, on the other hand, considered whether the royalty interests survived the termination of the Beaver Dam lease and certain tenancies in common. Further, the court determined that "the claims and issues in *Willits II* could not have been litigated in *Willits I*," because the termination of the land interests at issue in *Willits II* did not occur until after *Willits I* was decided. The court also noted that the Trusts' attorneys did raise full faith and credit arguments in *Willits II*, and that the attorneys "generally argued that *Willits I* was a controlling authority." The district court therefore determined that assertion of these preclusion arguments would not have changed the outcome of *Willits II*.

The district court also considered the Trusts' argument that the attorneys were negligent in failing to allege unconstitutional judicial takings and violations of substantive due process in *Willits II*. The court observed that there was no taking of private property for public use and that the *Willits II* ruling "did not so clearly deviate from established precedent such that it amounted to 'judicial elimination of established property rights'" or a violation of due process. Concluding that the Trusts failed to state a claim for legal malpractice, the district court dismissed the complaint.

II.

We review *de novo* the granting of a motion to dismiss. *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1033 (8th Cir. 2012). We accept as true the well-

pleaded allegations in the complaint and draw all reasonable inferences in favor of the non-moving party, but we are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). We also take judicial notice of the opinions and orders from the prior *Willits* cases, including the facts of what issues and claims were litigated, although we do not accept as true any historical facts found in those decisions that would be material to the issues here. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *Holloway v. Lockhart*, 813 F.2d 874, 878-79 (8th Cir. 1987); Fed. R. Evid. 201(b).[2]

To state a claim for legal malpractice under Missouri law, the Trusts must establish four elements: (1) that an attorney-client relationship existed; (2) that the defendant attorneys acted negligently or in breach of contract; (3) that such acts were the proximate cause of the Trusts' damages; and (4) that, but for the defendant attorneys' conduct, the Trusts would have been successful in the prosecution of their underlying claim. *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 561 (Mo. 2014). In a legal malpractice case, "causation in fact requires proof that 'but for' the attorney's negligence, the result would have been different." *Id.* at 562. In granting the attorneys' motion to dismiss, the district court determined that the Trusts failed to allege adequately that the attorneys were negligent or that the outcome of *Willits II* would have been different if the attorneys had raised any of the theories identified by the Trusts in their complaint.

---

[2]The defendant attorneys moved to strike portions of the Trusts' addendum on appeal. We deny the motion as it relates to the *Willits I* court documents, because "we may take judicial notice of proceedings in other courts that relate directly to matters at issue." *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 996 (8th Cir. 2007). The motion is denied as moot with regard to the remaining document, because the material is unnecessary to our decision, and we do not consider it. *See Stewart v. Prof'l Comput. Ctrs., Inc.*, 148 F.3d 937, 940 n.3 (8th Cir. 1998).

A.

The Trusts' primary theory of legal malpractice is that the attorneys acted negligently in failing to raise preclusion arguments in *Willits II*. As a matter of federal common law, state courts must give a final federal judgment in a diversity case like *Willits I* the same preclusive effect that the judgment would receive under state law in the State where the federal court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506-08 (2001). *Willits I* was litigated in the Western District of Kentucky, and the parties agree that the district court properly applied Kentucky preclusion law. Under Kentucky law, the doctrine of *res judicata* is comprised of issue preclusion and claim preclusion. The doctrine "stands for the principle that once the rights of the parties have been finally determined, litigation should end." *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 371 (Ky. 2010) (quoting *Slone v. R & S Mining, Inc.*, 74 S.W.3d 259, 261 (Ky. 2002)).

Issue preclusion "bars the parties from relitigating any issue actually litigated and finally decided in an earlier action." *Yeoman v. Commonwealth*, 983 S.W.2d 459, 465 (Ky. 1998). It has five elements: (1) at least one party to be bound in the second case must have been a party in the first case, (2) the issue in the second case must be the same as the issue in the first case, (3) the issue must have been actually litigated in the first case, (4) the issue must have been actually decided in that case, and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound. *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011).

Claim preclusion "prohibits the relitigation of claims that were litigated or could have been litigated between the same parties in a prior action." *Miller*, 361 S.W.3d at 871. For claim preclusion to apply, three elements must be shown:

-11-

(1) identity of the parties, (2) identity of the causes of action, and (3) the prior action must have been resolved on the merits. *Yeoman* 983 S.W.2d at 465.

1.

The Trusts first assert that their attorneys were negligent in failing to argue that *Willits I* precluded relitigation of issues presented in *Willits II*. The Trusts identify two propositions that they contend were established in *Willits I*: (1) that Peabody was required to pay royalties on coal mined from "after-acquired" property, and (2) that their royalty interest was "a vested fee simple property interest in perpetuity." The Trusts claim that the attorneys committed malpractice in *Willits II* by failing to advance these preclusion theories.

We reject the "after-acquired" property preclusion argument for two reasons. First, on the Parrott plaintiffs' claim in *Willits I* involving royalties from after-acquired properties, the district court ultimately entered final judgment for Peabody based on the statute of limitations. Add. 42; *see Willits I*, 1999 WL 701916, at \*19. Therefore, any decision about the Parrott plaintiffs' entitlement to royalties from after-acquired properties was not necessary to the judgment. Second, anything the district court in *Willits I* said about royalties from after-acquired properties before it was reversed did not address the same issue that was litigated in *Willits II*—*i.e.*, whether the royalty interests continued after termination of the Beaver Dam lease or the tenancies in common. *See Yeoman*, 983 S.W.2d at 465-66. The attorneys thus would not have succeeded by arguing this aspect of issue preclusion.

The Trusts next assert that *Willits I* determined that the royalty interest was "a vested fee simple property interest in perpetuity." The quoted phrase does not appear in any order from *Willits I*. The Sixth Circuit ultimately characterized the royalty interest as "a fee simple interest in Peabody's contingency." *Willits I*, 1999 WL

-12-

701916, at *20.  The Trusts contend, however, that *Willits I* determined that the royalty interest was a perpetual nonparticipating royalty interest.  They argue that if their attorneys had asserted issue preclusion on that point, then the *Willits II* courts could not have concluded that the royalty was instead an overriding royalty interest that ended when the underlying lease terminated.

We see no merit to this claim.  As relevant to the Trusts' claims, the Sixth Circuit's decision in *Willits I* was narrowly focused on whether the royalty interest violated the rule against perpetuities.  The court did not determine the precise nature of the royalty interest.  *Id.* at *19-20.  Although the court once referred to "*the district court's reasoning* that the perpetual nonparticipating royalty interests are contractual rights, as opposed to interests in property," *id.* at *19 (emphasis added), the opening line of the opinion described the interests as "overriding royalty interests," and twice referred to Parrott receiving or assigning an "overriding royalty interest."  *Id.* at *1.  Therefore, the issue decided in *Willits II*—the continued validity of the royalty interests after termination of the Beaver Dam lease and the tenancies in common—was not actually decided or necessary to the court's judgment in *Willits I*.  As such, the attorneys did not commit malpractice by failing to advance the issue preclusion argument.  *See Nail*, 436 S.W.3d at 562.[3]

---

[3]The Trusts argue on appeal that the attorneys were negligent in failing to argue in *Willits II* that *Willits I* established that Armstrong was an "assign" under the royalty agreements.  The Trusts forfeited this argument by failing to raise it in the district court, and the contention has no merit in any event.  The court of appeals in *Willits II* deemed it unnecessary to decide whether Armstrong was an assign, because the answer did not affect the outcome of the case.  332 S.W.3d at 265.

2.

The Trusts also assert that their attorneys committed malpractice by failing to argue for claim preclusion in *Willits II* based on Peabody's failure to raise a compulsory counterclaim in *Willits I*. Peabody prevailed in *Willits II* on the ground that the termination of the Beaver Dam lease and certain tenancies in common extinguished the royalty interest of the Parrott plaintiffs. The Trusts assert that Peabody allowed two so-called "Bennett leases" to expire in 1964, thus merging them into a fee simple estate owned by the Bennett family. They argue that Peabody in *Willits I* could have raised a counterclaim that the expiration of the Bennett leases terminated the 1954 royalty agreements. The Trusts fault their attorneys in *Willits II* for failing to argue that Peabody was precluded from relying on the termination of the Beaver Dam lease in *Willits II* when Peabody did not rely on the expiration of the Bennett leases in *Willits I*.

We agree with the district court that the proffered argument would not have changed the outcome in *Willits II*. The Missouri courts in *Willits II* ruled that the Parrott plaintiffs had a royalty interest in the Beaver Dam lease, and that their interest could not be "a property interest of greater dignity than the lease itself." 332 S.W.3d at 264 (quotation omitted). Thus, when the Beaver Dam lease terminated, the royalty interest arising from that lease terminated. Peabody could not have raised this argument in *Willits I*, because the Beaver Dam lease was not terminated until after *Willits I* was resolved. *See Coomer*, 319 S.W.3d at 371-72. Any argument in *Willits I* based on the termination of the Bennett leases would have been limited to extinguishing the royalty interest of the Parrott plaintiffs arising from the Bennett

-14-

leases. The Trusts thus have not stated a malpractice claim based on failure to press this preclusion theory in *Willits II*.[4]

B.

The Trusts also contend that the attorneys were negligent in failing to assert constitutional arguments concerning judicial takings and substantive due process in *Willits II*. Citing *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702 (2010), the Trusts argue that the Missouri courts committed a judicial taking and a substantive due process violation in *Willits II* when they determined that the royalty interests were terminated. The Trusts contend that the attorneys would have prevailed if they had raised these constitutional claims in *Willits II*.

We agree with the district court (and the state circuit court in *Willits III*) that the constitutional arguments lack merit. In *Stop the Beach*, a plurality concluded that courts may violate the Takings Clause by "declar[ing] that what was once an established right of private property no longer exists." 560 U.S. at 715. The plurality observed, however, that where "courts merely clarify and elaborate property entitlements that were previously unclear, they cannot be said to have taken an established property right." *Id.* at 727; *see also In re Lazy Days' RV Ctr., Inc.*, 724 F.3d 418, 425 (3d Cir. 2013) (stating that "adjudication of disputed and competing claims cannot be a taking"). *Willits II* did not eliminate an established property right,

---

[4]We reject the Trusts' argument that the doctrine of judicial estoppel precludes certain arguments raised by the attorneys that are allegedly inconsistent with arguments they presented in *Willits III*. The attorneys were not parties in *Willits III*, so the doctrine is inapplicable. *Cf. Heinze v. Bauer*, 178 P.3d 597, 603 (Idaho 2008) (concluding that "statements made on behalf of a client . . . are not personal admissions that may be used against the attorney in subsequent litigation").

but instead addressed the open question "whether the 1954 royalty agreements . . . are a product of and dependent upon the Beaver Dam lease and [the tenancies in common]." *Willits II*, 332 S.W.3d at 264. The Missouri court merely clarified and elaborated the rights of the Parrott plaintiffs under the royalty agreements, so a claim of judicial taking would have failed. For the same reasons, the decision did not eliminate an established property right in a way that might have implicated the Due Process Clause. *Cf. Stop the Beach*, 560 U.S. at 735 (Kennedy, J., concurring). We therefore conclude that the Trusts have also failed to state a legal malpractice claim based on their constitutional theories.

\* \* \*

The judgment of the district court is affirmed.

_____