# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-1683

———————————————

Panera, LLC

*Plaintiff - Appellant*

v.

James Dobson; Krish Gopalakrishnan; James Phillips, also known as Kyle; Act III
Management, LLC

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: February 18, 2021
Filed: June 8, 2021

——————————

Before SMITH, Chief Judge, WOLLMAN and STRAS, Circuit Judges.

——————————

SMITH, Chief Judge.

Panera, LLC ("Panera") appeals from the district court's order dismissing its
civil action against Act III Management, LLC ("Act III") and former employees
James Dobson, Krish Gopalakrishnan, and James Phillips (collectively, "individual
defendants") under the doctrine of forum non conveniens. We dismiss the appeal as
moot and vacate the district court's order.

## I. *Background*

The individual defendants are former employees of Panera, a fast casual dining company. The individual defendants executed non-compete agreements with Panera containing a six-month prohibition on employment with Panera's competitors. The non-compete agreements also contained a forum selection clause providing that litigation take place in Missouri.

Ron Shaich, the former President, CEO, and Chairman of the Board of Directors of Panera, formed Act III. Act III owns and manages several fast causal brands. In 2018, the president of one of Act III's business holdings began working for Panera. Act III threatened to enforce that president's non-compete agreement. Panera claimed the president's non-compete agreement was invalid. To avoid litigation, the parties entered into a settlement agreement. That agreement permitted Act III to solicit and make an offer of employment to Panera employees, provided that Act III first provide written notice of the offer within a designated time. During that time, Panera had the option to "negotiate terms for the employee to remain employed by Panera, or . . . decide that it will waive the terms of any applicable non-competition agreement." *Panera, LLC v. Dobson*, No. 4:19-cv-276-HEA, 2019 WL 1001536, at *1 (E.D. Mo. Feb. 28, 2019). Nothing in the settlement agreement "waive[d], abridge[d,] or exstinguish[ed] any . . . remedies that the Act III Entities or such employee may have at law or in equity regarding the applicability or enforceability of such non-competition agreement." *Id.* at *2. The agreement obligated Panera to act in good faith. Importantly, the settlement agreement also contained a forum selection clause stating that "the exclusive jurisdiction and venue for any actions arising out of this Settlement Agreement shall be in any state or federal court in Delaware." *Id.*

On February 5, 2019, the individual defendants informed Panera that Act III had offered them employment and submitted their resignations. On February 8, Act III sent formal notice of the offers of employment to Panera and requested that it

waive the non-compete agreements. The same day, Panera terminated the individual defendants' employment. On February 13, Panera informed Act III that it intended to litigate the non-compete agreements.

On February 21, 2019, Act III filed suit against Panera in Delaware state court ("Delaware court"), alleging that Panera breached the settlement by (a) "insisting on enforcing the [individual defendants'] non-competes even though it is not reasonably necessary for Panera to do so; and (b) failing to assess in good faith the request that it waive the non-competes." *Id.* Panera responded by moving to dismiss or stay Act III's complaint on two grounds: (1) Delaware was not the proper forum, and (2) Act III lacked standing to challenge the enforceability of the individual defendants' non-compete agreements.

That same day, Panera also filed the instant action in federal district court in Missouri. Additionally, it sought a temporary restraining order (TRO) to enjoin the individual defendants from beginning work at Act III on March 1, 2019. The following day, Act III moved in the district court to dismiss the case on forum non conveniens grounds or stay the action.

On February 28, 2019, the district court granted Act III's dismissal motion. It concluded that the forum selection clause contained in the settlement agreement between Panera and Act III required the parties to litigate in Delaware. Panera immediately filed suit in the Delaware court on March 1, 2019.[1] The complaint was

---

[1]Both parties have moved for us to take judicial notice of the Delaware court proceedings. We grant the parties' motions. *See, e.g.*, *PPW Royalty Tr. by & through Petrie v. Barton*, 841 F.3d 746, 753 (8th Cir. 2016) ("We also take judicial notice of the opinions and orders from the prior *Willits* cases, including the facts of what issues and claims were litigated . . . ."), *as amended* (Oct. 28, 2016); *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 n.2 (8th Cir. 2013) ("We may take judicial notice of the matters filed in this related case."); *Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d

virtually identical to the complaint that the Missouri district court had dismissed the day prior. Panera simultaneously moved for a TRO—just as it had in the district court—to prevent the individual defendants from working for Act III. On March 8, the Delaware court granted Panera's motion for a TRO. Panera then moved for a preliminary injunction, which the Delaware court granted.

On March 29, 2019, Panera filed its notice of appeal of the district court's dismissal order.

On April 19, 2019, Panera expressly acknowledged to the Delaware court that it was "accept[ing] and voluntarily submit[ting] to jurisdiction" in the Delaware court. *See* Ex. 3 to Appellees' Motion for Judicial Notice at 1. Panera explained that, "left with no other option to prevent irreparable harm," it "consented to venue and jurisdiction in [the Delaware court] pertaining to its claims for preliminary injunctive relief" on March 1, 2019. *Id.* at 2. It assured the Delaware court that it was "not in any way challenging jurisdiction or venue [in the Delaware court] for this matter." *Id.* Panera represented that the debate over the impact of the district court's dismissal order was "rendered moot as to the issue of whether [the Delaware court] c[ould] exercise jurisdiction because Panera consent[ed] to this venue." *Id.* at 6. Nonetheless, it asserted it was "appealing the Missouri dismissal to protect" its "contractual right to insist on a Missouri forum in any future litigation regarding its non-compete agreements." *Id.*

## II. *Discussion*

In light of Panera's acceptance of and submission to the Delaware court's jurisdiction and venue, both parties now agree that no actual controversy remains

---

986, 996 (8th Cir. 2007) ("[W]e may take judicial notice of proceedings in other courts that relate directly to matters at issue.").

concerning proper venue and the appeal is moot.[2] The only remaining question is whether this court should vacate the district court's dismissal order.

"The statute that enables us to vacate a lower court judgment when a case becomes moot is flexible, allowing a court to 'direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.'" *Alvarez v. Smith*, 558 U.S. 87, 94 (2009) (quoting 28 U.S.C. § 2106). In similar cases of mootness, both our precedent and that of the Supreme Court typically favor vacating the lower court's judgment. *Id.* (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950)). Doing so enables the parties to litigate their issues on a clean slate. *Id.* (citing *Munsingwear*, 340 U.S. at 40); *see also Camreta v. Greene*, 563 U.S. 692, 712 (2011) ("Our 'established' (though not exceptionless) practice in this situation is to vacate the judgment below." (quoting *Munsingwear*, 340 U.S. at 39)); *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019) (recognizing that "our normal practice when a civil case becomes moot pending appellate adjudication" is to "vacate the district court's judgment").

"But vacatur is an equitable remedy, not an automatic right." *Moore*, 928 F.3d at 758 (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994) (declining to vacate lower court decision after settlement mooted the case)). "[A]bsent unusual circumstances, our decision [whether to vacate the lower court judgment] is informed almost entirely, if not entirely, by the twin considerations of fault and public interest." *Id.* (quotation omitted). The consideration of fault concerns "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Bancorp*, 513 U.S. at 24. Vacatur, as an equitable remedy, is generally inappropriate in circumstances where a losing party essentially arranges an appeal's dismissal by settlement. *See id.* at 25 ("Where mootness results from settlement, . . . the losing party has voluntarily forfeited his legal remedy by the ordinary

---

[2]Panera conceded at oral argument that the appeal is moot.

processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice."). Such voluntary forfeiture of the legal remedy of appellate review also surrenders the party's claim to the equitable relief of vacatur of the trial court's judgment. *Id.* And vacatur is not an appropriate remedy when a case is mooted because the losing party "declined to pursue its appeal." *Id.* at 26 (quoting *Karcher v. May*, 484 U.S. 72, 83 (1987)).

By contrast, "[a] party who seeks review of the merits of an adverse ruling, *but is frustrated by the vagaries of circumstance*, ought not in fairness be forced to acquiesce in the judgment." *Id.* at 25 (emphasis added). "In *Alvarez*, . . . the Court interpreted the definition of 'voluntary action' narrowly, ruling that the *Bancorp* exception to vacatur only applied where mootness is the result of settlement *or something that closely resembles settlement*." *Timmins v. Narricot Indus., L.P.*, 360 F. App'x 419, 422 (4th Cir. 2010) (unpublished per curiam) (emphasis added) (citing *Alvarez*, 558 U.S. at 93–96).

The Supreme Court recognized in *Alvarez* "that, even where a party has voluntarily mooted the appeal, it is possible for compelling equitable circumstances to militate strongly in favor of vacatur." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1120 (10th Cir. 2016) (citing *Alvarez*, 558 U.S. at 96–97 (ordering vacatur despite the state mooting the appeal by voluntarily returning cars and cash that it had seized from the plaintiffs because the state had done so in the ordinary course of state court proceedings having no procedural link to the federal case)). "[U]nder a holistic vacatur analysis, the fact that [a party's] purpose was *unrelated to mooting*" constitutes a "significant" factor. *Id.* at 1122 (emphasis added).

Along with fault, public interest also plays an important role in determining whether to vacate the lower court judgment. *See Bancorp*, 513 U.S. at 26. "Judicial

precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* at 26 (quotation omitted). "Specifically, the public has an interest in protecting district court precedents from 'a refined form of collateral attack:' the appellant who settles while appeal is pending and, having rendered the case moot by his own actions, demands the adverse lower-court opinion be vacated." *NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007) (quoting *Bancorp*, 513 U.S. at 26). But the Supreme Court has "never suggested . . . that the precedential value of a decision alone renders vacatur inappropriate. Such a rule would swallow *Munsingwear*." *Am. Fam. Life Assurance Co. of Columbus v. F.C.C.*, 129 F.3d 625, 631 (D.C. Cir. 1997).

Here, Panera's action of filing an identical suit in the Delaware court one day after the district court's dismissal in Missouri does not satisfy the Supreme Court's narrow definition of "voluntary action" to justify invocation of the *Bancorp* exception to vacatur. *See Timmins*, 360 F. App'x at 422. Panera "did not settle the case, nor did [it] fail to appeal." *NASD Disp. Resol*, 488 F.3d at 1070. The parties continue to litigate the underlying claims in the Delaware court. And, Panera *did* appeal the district court's dismissal order to this court and argue in its briefing that the appeal was not moot by virtue of an exception. *See* Appellant's Reply Br. at 9. Only at oral argument did Panera finally concede that the appeal was moot. Panera's decision to file suit in the Delaware court was born out of exigency. The individual defendants were scheduled to begin work with Act III on March 1, 2019. The district court entered its dismissal order the day before. Time was of the essence for Panera to gain a TRO to prevent the individual defendants from working for Act III. For that reason, Panera filed suit against Act III in Delaware and sought a TRO on March 1, 2019. In sum, mootness was not "the result of settlement or something that closely resembles settlement." *Timmins*, 360 F. App'x at 422. Instead, it was the result of the exigent circumstances that Panera faced to protect its interests.

The public certainly has an interest in judicial precedents. *See Bancorp*, 513 U.S. at 26. But the precedential value of the district court's judgment is lessened because the case concerns the interpretation of two specific agreements entered into solely by these parties affecting only their rights under them. For that reason, the value of the judgment to the public at large is minimal. Nor is this a case of a settling party's "refined form of collateral attack" on a district court's judgment that the public has an interest in protecting. *NASD Disp. Resol.*, 488 F.3d at 1069 (quoting *Bancorp*, 513 U.S. at 26).

Therefore, we will apply our normal practice of vacating the lower court's judgment in a moot appeal. *See Alvarez*, 558 U.S. at 94; *Camreta*, 563 U.S. at 712; *Moore*, 928 F.3d at 758.

### III. *Conclusion*

Accordingly, we hold that the appeal is moot. We vacate the district court's judgment and remand with directions to dismiss Panera's complaint.

_____